UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| TRACY BOLWELL, | : | CIVIL ACTION NO: |
| | : | 3:02CV01001(AWT) |
| Plaintiff, | : | |
| | : | |
| vs. | : | |
| | : | |
| DURAMED PHARMACEUTICALS, | : | JULY 1, 2005 |
| INC., BARR LABORATORIES, | : | |
| INC., | : | |
| | : | |
| Defendants. | : | |

### DEFENDANTS' DURAMED PHARMACEUTICALS, INC. AND BARR LABORATORIES, INC.'S REPLY TO PLAINTIFF'S OBJECTION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

NOW COME defendants, Duramed Pharmaceuticals, Inc., and Barr Laboratories, Inc., by and through counsel, and hereby file this Reply to plaintiff's Objection to defendants Motion for Summary Judgment and would show the Court as follows:

**I.      INTRODUCTION**

Plaintiff's argument that her claims did not accrue in 1997 because causation was not conclusively proven misconstrues Connecticut law applicable to the statute of limitations for product liability actions. The law of Connecticut does not require that the causation element of a claim be conclusively established before the statute of limitations begins to run. Rather, a plaintiff only needs to be on notice of essential elements of her claim to have suffered an actionable harm, triggering the statute of limitations.

The record establishes that as of February 6, 1997, plaintiff knew she had been injured and was informed her injury was potentially associated with her use of defendants' product. That knowledge was provided by the diagnosis and opinion of her treating physician, Dr. Leifer, who specifically advised her that her stroke may be

associated with her use of PPA. Under Connecticut law, that knowledge alone was sufficient to place plaintiff on notice of an actionable harm and trigger the three year statute of limitations applicable to her claims. As plaintiff did not file suit until June 11, 2002, her claims are barred by the statute of limitations, and defendants are entitled to summary judgment.

## II. LAW AND ARGUMENT

### A. The Legal Standard Applicable To A Statute Of Limitations Analysis.

It is well established that "[i]n Connecticut a cause of action accrues when a plaintiff suffers an actionable harm." *See Gnazzo v. G.D. Searle & Co.*, 973 F.2d 136, 138 (2d. Cir. 1992) (*quoting Champagne v. Raybestos-Manhatten*, 212 Conn. 509 (1989)). Actionable harm occurs "when the plaintiff discovers, or in the exercise of reasonable care should have discovered, **the essential elements of cause of action**." *See Lambert v. Stovell*, 205 Conn. 1, 6 (1987) (emphasis added). Further, "the statute of limitations begins to run when the plaintiff discovers some form of actionable harm, not the fullest manifestation thereof." *Id.* In determining whether plaintiff's claim has accrued, "the focus is on the plaintiff's knowledge of the facts, rather than on discovery of applicable legal theories." *See Catz v. Rubenstein*, 210 Conn. 39, 43 (1986) (*quoting Burns v. Hartford Hosp.*, 192 Conn. 451 (1984).

In *Gnazzo* the Court held that in a product liability suit, "[a]ctionable harm occurs when the plaintiff discovers or should discover, through the exercise of reasonable care, that he or she has been injured and that the defendant's conduct caused such injury." *See Gnazzo*, 973 F.2d at 138. As demonstrated by the holding in *Gnazzo*, discussed infra, the "causation" requirement identified by the Court means that plaintiff must discover facts

sufficient to allege the element of causation. *See id.* If plaintiff knows she has been injured and is aware of facts which support an allegation that the product caused the injury, the statute of limitations begins to run. *See id.* Contrary to plaintiff's assertions, that requirement does not mean that a plaintiff must have conclusive proof of causation before an actionable harm accrues. *See id.* Indeed, if that were the requirement, the statute of limitations in a product liability suit would not begin to run on a plaintiff's claim until the plaintiff established causation at trial.

Plaintiff's entire Objection to defendant's Motion for Summary Judgment hinges on her position that she must know definitively that defendants' conduct caused her harm. However, plaintiff misconstrues Connecticut law regarding the causation requirement for accrual of an action. The rule in Connecticut is that a plaintiff is on notice of an actionable harm if the plaintiff has enough information that a reasonable inquiry would lead her to the conclusion that defendants' conduct may be the cause of her injury. Causation need not be definitively proven for the statute of limitations to begin running. Moreover, a plaintiff has a duty to exercise reasonable care to discover whether defendants' conduct was a potential cause of her injury, and her failure to do so does not toll the statute of limitations.

Pursuant to this standard, and for the reasons set forth below, there is no genuine issue of material fact as to whether plaintiff suffered an actionable harm in 1997 such that the statute of limitations on her product liability claim began to run, and defendants are entitled to summary judgment.

### B. Plaintiff Was Aware Of The Essential Elements Of A Product Liability Claim And That She Suffered An Actionable Harm In 1997.

Plaintiff argues repeatedly that, despite Dr. Leifer's statements to her about PPA and its possible connection with her stroke while she was in the hospital in 1997, she was not aware that PPA "caused" her stroke at that time because an association between PPA and stroke had not been conclusively established.[1] For instance, plaintiff states that Dr. Lifer only told her of the existence of a potential connection between her use of PPA and stroke. (*See* plaintiff's Objection to defendants' Motion for Summary Judgment, p. 9.) Further, plaintiff's Objection sarcastically claims that "[i]n bringing [their Motion for Summary Judgment], Defendants would charge Ms. Bolwell (a high-school graduate) with greater knowledge about the casual connection between PPA and stroke than; (i) her team of doctors at Yale University (some of whom were in the process of trying to establish the existence of just such a thing); (ii) the pharmaceutical industry (who at the time insisted that PPA was safe and effective and did not cause hemorrhagic stroke); and (iii) the FDA." (*See id.*, p. 10) That remark only serves to highlight plaintiff's misunderstanding of the statute of limitations set forth in Connecticut General Statute § 52-577a(a) and what causes a claim to accrue under the statute.

As referenced above, an actionable harm occurs when the plaintiff discovers, or reasonably should discover, the essential elements her cause of action. It is not required that the elements of a plaintiff's claim be conclusively established before the statute of limitations begins to run. If that were the case, no statute of limitations would ever expire. Rather, a plaintiff only needs to be aware of facts sufficient to allege each element of a cause of action in order to trigger the statute of limitations.

---

[1] Contrary to plaintiff's statements in her Objection to defendants' Motion for Summary Judgment, defendants contend that PPA does not cause hemorrhagic stroke and did not cause Ms. Bolwell's stroke.

In order to prevail on her claim for strict liability pursuant to Connecticut's Product Liability Act at trial, plaintiff must prove, among other things, general causation (that PPA is capable of causing strokes in the general population) and specific causation (that PPA caused plaintiff's stroke). *See Perkins v. Origin Medsystems, Inc.*, 299 F. Supp.2d 45, 55 (D. Conn. 2004). However, conclusive proof of general and specific causation is not necessary to trigger the statute of limitations. Plaintiff's claim began accruing as soon as she became aware of facts sufficient to allege PPA caused her stroke.

Plaintiff admits she was aware she suffered a stroke in 1997. (*See* plaintiff's Local Rule 56(a)(2) Statement, ¶ 1.) Further, she acknowledges that in 1997 Dr. Leifer told her that PPA may generally cause stokes in women and that it may have been the cause of her stroke. (*See id.*, at ¶ 3.) Therefore, plaintiff has conceded that she knew she was injured and knew PPA may have caused her injury as of 1997. Knowledge of those facts put plaintiff on notice of the essential elements of a claim for product liability and that she had suffered an actionable harm. Plaintiff's failure to file her action until over five years after she learned that information bars her claims, and defendants are entitled to summary judgment.

### C.    Pursuant to Connecticut Law, Dr. Leifer's Statements in 1997 Put Plaintiff On Notice She Had Suffered An Actionable Harm.

As anticipated by defendants in their Motion for Summary Judgment, plaintiff claims she did not know PPA caused her stroke, such that her claim began to accrue under Connecticut law, until "late 2000" when she saw a program on television about a connection between the use of PPA and stroke. (*See* plaintiff's Objection to defendants' Motion for Summary Judgment, pp. 10-12.) The program was an advertisement placed

by a law firm soliciting PPA plaintiffs. (*See* Deposition of Tracy Bolwell, pp. 118-121, attached as Exhibit 2 to defendants' Motion for Summary Judgment.)

In *Gnazzo* the Second Circuit addresses exactly what type knowledge is sufficient to provide a plaintiff with notice that "defendant's conduct caused [an] injury" such that their cause of action in a product liability matter accrues under Connecticut law. In that case, plaintiff had an intrauterine device ("IUD") implanted for contraceptive purposes in 1974. *See Gnazzo*, 973 F.2d at 137. She suffered from Pelvic Inflammatory Disease ("PID") sporadically from October 1975 until December 1977, when her IUD was removed. *See id.* Then in 1981, plaintiff began to generally hear and read about injuries associated with the use of IUD's, but she did not make any effort to initiate an action. *See id.* Only after her fertility doctor advised her in 1989 that her previous PID had been caused by her IUD did she file an action. *See id.*

The trial court granted defendant's motion for summary judgment on the grounds that plaintiff's claim was time barred by the statute of limitations. On appeal, the Second Circuit affirmed and held that plaintiff "recognized, or should have recognized, the critical link between her injury and the defendant's causal connection to it" in 1981 based on the fact she acknowledged she had first "started hearing and reading" that IUD's could be dangerous at that time. *See id.*, at 138. Plaintiff's general "hearing and reading" about a connection between her injuries and her use of the IUD was enough to give her notice of causation sufficient to start the running of the statute of limitations. *See id.*

As pointed out by plaintiff in her Objection to defendants' Motion for Summary Judgment, she did not generally hear and read about stroke being associated with the use of PPA in 1997. Rather, plaintiff's own treating neurologist, specialized in the treatment

of strokes and personally involved in the hallmark study on PPA and stroke, specifically informed her that her stroke could have been caused by her use of PPA. Combined with her diagnosis of hemorrhagic stroke, that information was more than enough for plaintiff to be put on notice that she had suffered an actionable harm. The fact that she allegedly did not believe Dr. Leifer and, by her own admission, did nothing to investigate the connection referenced by Dr. Leifer, does not stay the running of the statute of limitations on her claim.

Further, plaintiff's attempt to distinguish *Gnazzo* is a distinction without a difference. Plaintiff argues that while the plaintiff in *Gnazzo* had sufficient knowledge of a casual connection between her injury and IUD's based on what she generally read and heard, it would be "unreasonable" for the Court to expect her to have made a similar causal connection based on the information she received from Dr. Leifer. Plaintiff would have the Court hold that generally hearing and reading about potential adverse effects associated with a product is enough to put a plaintiff on notice of an actionable harm in a products liability action, but the opinion of a treating physician, specialized in the treatment of the injury at issue, is not. Indeed, plaintiff requests that the court find that, despite the statements made by Dr. Leifer in 1997, plaintiff was not aware she had suffered an actionable harm until she saw an advertisement for a law firm soliciting PPA plaintiffs over three years later. Such a result would not only render a physician's diagnosis irrelevant for statute of limitations purposes, but it also would reward plaintiff for failing to pursue her claim for over three years.

        D.      **The Fact That The FDA Did Not Require PPA Withdrawn From The Market Until 2000 Is Irrelevant.**

Plaintiff also argues that the statute of limitations on her claims did not begin to run at the time Dr. Leifer told her of the potential connection between PPA and her stroke in 1997 because PPA was still on the market at that time. (*See* plaintiff's Objection to defendants' Motion for Summary Judgment, p. 9.) Plaintiff argues that she could not reasonably have made the necessary casual connection between her use of PPA and her stroke until the FDA mandated the withdrawal of PPA from the market in November 2000. (*See id.*) That argument is nothing more than a red herring.

Plaintiff provides the Court with no authority to support her assertion that a casual connection sufficient to trigger the running of the statute of limitations cannot be made until the FDA orders regulatory action. The lack of authority for that argument is not surprising, as no such authority exists. It is well established in Connecticut that a plaintiff can suffer an actionable harm and product liability actions can begin to accrue without regulatory withdrawal of the product from the market. *See e.g. Vitanza v. Upjohn Company*, 48 F. Supp.2d 124 (D. Conn. 1999).

Furthermore, there is no evidence in the record, whatsoever, that plaintiff was aware that the FDA mandated the withdrawal of PPA from the market in November 2000. In her deposition, plaintiff testified she first learned of the potential connection between PPA and her stroke through a television advertisement from a law firm. She did not mention the FDA regulation of PPA at all. Additionally, plaintiff's Objection to defendants' Motion for Summary Judgment is not supported by an Affidavit attesting that plaintiff knew of the FDA's withdrawal of PPA or that it had any effect on her decision to commence her action. Therefore, the FDA's regulation of PPA in November 2000 is

completely irrelevant to the determination of whether plaintiff was on notice of an actionable harm in 1997.

### III. CONCLUSION

For the foregoing reasons, defendants Duramed Pharmaceuticals, Inc., and Barr Laboratories, Inc., again respectfully request the Court grant their Motion for Summary Judgment and dismiss all of plaintiff's claims.

Respectfully Submitted,

_____
Thomas H. Winslow
Federal Bar No.: CT 00733
The Law Office of Thomas H. Winslow, LLC
321 Main Street
Farmington, CT  06032-2976
860-678-4425
860-678-4427 FAX


**Counsel for Defendants
Duramed Pharmaceuticals, Inc., and
Barr Laboratories, Inc.**

### CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was served via U.S. mail on the 1st day of July, 2005 on:

The Honorable Alvin W. Thompson
United States District Court
District of Connecticut
450 Main Street
Hartford, CT  06103

Attorney Jeff Geoppinger
Ulmer & Berne, LLP
600 Vine Street, Suite 2800
Cincinnati, OH 45202

Michael J. Luzzi, Esq.
Early, Ludwick & Sweeney, L.L.C.
265 Church Street, 11th Floor
P.O. Box 1866
New Haven, CT 06508-1866

_____
Thomas H. Winslow
Federal Bar No.: CT 00733
The Law Office of
Thomas H. Winslow, LLC
321 Main Street
Farmington, CT 06032
Tel. No. 860-678-4425
Fax No. 860-678-4427