UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| TRACY BOLWELL, | : | CIVIL ACTION NO. 302CV01001AWT |
| Plaintiff, | : | |
| vs. | : | |
| DURAMED PHARMACEUTICALS, INC., and BARR LABORATORIES INC., | : | |
| Defendants. | : | NOVEMBER 29 , 2005 |

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S OBJECTION TO DEFENDANTS DURAMED PHARMACEUTICALS, INC'S. AND BARR LABORATORIES, INC'S MOTION FOR RELIEF FROM ORDER PURSUANT TO F.R.C.P. 60(b)(6) OR, IN THE ALTERNATIVE, MOTION FOR RECONSIDERATION**

I.  **Summary**

On or about July 8, 2005, this Court ruled that there exists a genuine issue of material fact as to when the product liability statute of limitations began to run in this case and consequently denied Defendants' Motion for Summary Judgment on the issue. On or about November 15, 2005 and pursuant to Rule 60(b)(6) of the Federal Rules of Civil Procedure, Defendants have moved for relief from the Court's denial of the Defendants' Motion for Summary Judgment. In the alternative, Defendants ask this Court to reconsider its previous ruling.

**ORAL ARGUMENT REQUESTED**

1

Defendants' current Motions must be denied because:

1. There is no basis under F.R.C.P. 60(b)(6) to support Defendant's Motion for Relief – Defendants have made no showing of extreme hardship or any other reason to justify relief from the Court's denial of their previous Motion for Summary Judgment; and

2. Defendants' Motion to Reconsider is untimely under Rule 7 of the Local Rules of Civil Procedure.

3. There is no basis for the Court to reconsider its previous denial of Defendants' Motion for Summary Judgment – there has been no change in the controlling law, no newly discovered evidence and no need to correct clear error or manifest injustice.

II. **Background**

   **A. Procedural History**

On June 21, 2002, Tracy Bolwell, f/k/a Tracy Kupferschmid ("Ms. Bolwell") filed a products liability action against the defendants, Duramed Pharmaceuticals, Inc. and Barr Laboratories, Inc. ("Defendants") in the United States District Court District of Connecticut. On or about August 27, 2002 Ms. Bolwell's action was transferred the Multi-District Litigation styled *In re Phenylpropanolamine Products Liability Litigation* ("MDL") consolidated in the United States District Court for the

Western District of Washington. On March 21, 2005, a suggestion of remand was issued and a formal Order of Remand followed on April 28, 2005. This Court re-claimed jurisdiction over this matter on or about May 31, 2005.

On or about June 6, 2005, Defendants filed a Motion for Summary Judgment claiming that the Plaintiff had filed her action after the applicable Statutes of Limitations had run. Plaintiff filed her Objection to Defendants' Motion on June 24, 2005, to which the Defendants filed a Reply on July 1, 2005.

On July 8, 2005, the Court denied Defendant's Motion as to Plaintiffs' claims under the Connecticut Product Liability Act ("CPLA") but granted Defendants' Motion as to Plaintiffs' claim under the Connecticut Unfair Trade Practices Act ("C.U.T.P.A.).

On or about November 15, 2005 and pursuant to Rule 60(b)(6) of the Federal Rules of Civil Procedure, Defendants have moved for relief from the Court's previous ruling that denied the Defendants' Motion for Summary Judgment. In the alternative, Defendants ask this Court to reconsider that previous ruling.

### B. Statement of Facts

On January 21, 1997 Ms. Bolwell suffered a hemorrhagic stroke. (See Tracy Bolwell's June 11, 2003 deposition ("Bolwell Depo.") at p. 64 Exhibit 1). At the time, she was 26 years old and the mother of a one year-old son. On the days preceding the onset of her stroke, Ms. Bolwell suffered from a head-cold and as a result, was

3

prescribed the Defendants' product, a cough and cold compound containing phenylpropanolamine ("PPA"). (Bolwell Depo. at pp. 64-69). After retrieving her prescription from the pharmacy, Ms. Bolwell ingested her first dose of PPA at approximately 9 am. (Bolwell Depo. at pp. 70-74, 79).

Later that same day (January 21, 1997), Ms. Bolwell ingested her second dose of PPA and approximately one hour later began vomiting and experiencing acute pain in her head. (Bolwell Depo. at pp. 80-81). Ms. Bolwell could not walk and had trouble moving her neck. (Bolwell Depo. at pp. 80-81). She was rushed to Vassar Brothers Hospital ("Vassar") in Poughkeepsie, New York. (Bolwell Depo. at pp. 82-83), where a CT Scan and MRI revealed a 4 cm right basal ganglia hemorrhage. (*See* Yale New Haven Hospital Discharge Summary dated March 27, 1997 ("Discharge Summary"), Exhibit 2).

Ms. Bolwell spent 5 days at Vassar and was transferred to Yale New Haven Hospital ("Yale"), New Haven, Connecticut. (*See* Discharge Summary). Ms. Bolwell was admitted at Yale on January 27, 1997 and discharged from in-patient care on February 6, 1997. *Id*. While at Yale, Ms. Bolwell's doctors performed a right frontal craniotomy, leptomeningeal and brain biopsies. (*See* Yale Operative Report dated February 3, 1997 ("Operative Report") Exhibit 3). Ms. Bolwell's post-operative diagnosis was a spontaneous right intracerebral hemorrhage of unknown etiology. (*See* Operative Report). While at Yale, Ms. Bolwell received extensive physical and

4

occupational therapy. (*See* Yale Social Work Evaluation dated January 27, 1997, Exhibit 4). On February 6, 1997, Ms. Bolwell was discharged to her home with garbled speech, (Bolwell Depo. at p. 95), where family members cared for her. (Bolwell Depo. at pp. 97-98). While at home, and with the assistance of family members, Ms. Bolwell continued with physical and occupational therapies two to three times per week for approximately three months. (Bolwell Depo. at pp. 97-99). After her discharge Ms. Bolwell also became depressed and was treated for depression. (Bolwell Depo. at pp. 99-100).

Today, Ms. Bolwell suffers from memory loss. (Bolwell Depo. at p. 108). She also suffers from increased fatigue. (Bolwell Depo. at p. 111). Additionally, Bolwell's employment has been adversely affected by her memory and her difficulties with handwriting. (Bolwell Depo. at p. 114).

### III.  **Law and Argument**

#### A. Standard for Relief under F.R.C.P 60(b)(6)

Under F.R.C.P. 60(b)(6), a party may request relief from a judgment or order upon a showing of a "reason justifying relief from the operation of the judgment." Relief under F.R.C.P. 60(b)(6) is available in a "proper case" to do justice when relief is not otherwise available under the preceding subsections of F.R.C.P. 60(b). 7 *Moore's Federal Practice* P 60.27(2) at 375 (2d. ed.rev. 1975).

"It is well established, however, that a "proper case" for Rule 60(b)(6) relief is only one of extraordinary circumstances" *United States v. Cirami*, 563 F.2d 26, 32 (2d. Cir. 1977) quoting *Ackerman v United States*, 340 U.S. 193, 199, 71 S.Ct. 209, 95 L.Ed. 207 (1950).

### B. The Court should deny Defendants' Motion for Relief under Rule 60(b)(6)

#### 1. Defendants' Reliance on Cited Case is Misplaced

Defendants' rely on *Cirami* (*supra*) to support their motion. Such reliance, however, is misplaced. In *United States v. Cirami*, the government filed a motion for summary judgment to which the taxpayer's counsel failed to respond due to mental disorder. The taxpayers were unaware of the Motion and of their attorney's mental disorder. They were unable to communicate with him while the government's motion was pending. The government's attorneys were apparently unable to communicate with the taxpayer's counsel before they filed the Motion for Summary Judgment and failed to notify the lower court of this fact. The lower court granted the government's motion for summary judgment and, in doing so, rendered a final default judgment of a substantial tax assessment against the taxpayer who, because of his attorney's mental disorder and the questionable conduct of the government, was deprived of the opportunity to defend against the motion and the resulting assessed tax.

In reviewing the lower court's summary judgment and the circumstances surrounding it, the Second Circuit Court of Appeals said:

> "Where one timely seeking Rule 60(b)(6) relief from a default judgment can make out a strong case that he had a meritorious defense which could have been asserted but for a truly extraordinary turn of events not covered by the first five clauses of the rule and which brought about his default and resulted in a substantial injustice to him, it is appropriate to vacate the judgment so that the merits of his case can be considered."

United States v. Cirami, 563 F.2d 26, 35 (2d. Cir. 1977).

Unlike the taxpayer in *Cirami*, the Defendants have not been deprived of their opportunity to present a "meritorious defense which could have been asserted but for a truly extraordinary turn of events..." *Id.* Rather, all of Defendants' rights to present their defenses to Plaintiff's claims remain intact, undisturbed by this Court's denial of their June 6, 2005 Motion for Summary Judgment.

### 2. Defendant's have not demonstrated a "Proper Case"

The Defendants have made no showing of any extraordinary circumstances that makes theirs a "proper case" for relief under F.R.C.P. 60(b)(6). The Defendants only argument for their 60(b)(6) motion is that a Massachusetts state trial court decision, denying a defendant's motion for summary judgment, "could reasonably

alter the conclusions reached by the Court." By pointing to selected dicta from the Massachusetts court's opinion in *Murphy v. Novartis Consumer Health, Inc.* 2005 WL 2319157 (Mass. Super.), the Defendants argue that such passages should convince this Court to reverse its denial of their Motion for Summary Judgment. Neither the Massachusetts court's ruling nor the Defendants' argument presents the type of "extraordinary circumstances" required for the granting of relief under 60(b)(6). Moreover, the Defendants have ignored the essential basis for the Massachusetts court's decision in *Murphy*, the same basis for this Court's denial of the Defendants' Motion for Summary Judgment: <u>that the question of when a plaintiff knew or should have known of his cause of action is generally a question of fact which is to be decided by the trier of fact</u>. *See Id* at 4, citing *Riley v. Presnell*, 409 Mass. 239, 240 (1991).

The Defendants' Motion for Relief pursuant to Rule 60(b)(6) should be denied because they have failed to demonstrate the requisite extraordinary circumstances that make theirs a "proper case" for relief under F.R.C.P. 60(b)(6).

### C. Timeliness and Content of a Motion to Reconsider

Under Rule 7 (c) (1) of the Local Rules of Civil Procedure, "Motions for reconsideration shall be filed and served within ten (10) days of the filing of the decision or order from which such relief is sought, and shall be accompanied by a

memorandum setting forth concisely the matters or controlling decisions which counsel believes the Court overlooked in the initial decision or order."

### D. The Court should deny Defendants' Motion to Reconsider for Failure to Comply with L. Civ. R. 7

The Defendants' Motion for Reconsideration was filed on or about November 15, 2005, which is approximately 4 months after the date – July 8, 2005 – that this Court denied Defendants' Motion for Summary Judgment. Clearly, Defendants' Motion for Reconsideration is untimely under L. Civ. R. 7 and should therefore be denied.

In addition, Defendants' Motion fails to set "...forth concisely the matters or controlling decisions which counsel believes the Court overlooked in the initial decision or order." L. Civ. R. 7 (1). The reason is for this failure is obvious: there are no such matters or controlling decisions that this Court overlooked. Accordingly, Defendants' Motion for Reconsideration should be denied for failure to comply with the substantive requirement of L. Civ. R. 7 (1).

### E. Standard for Granting a Motion to Reconsider

According to the Second Circuit Court of Appeals, "[t]he standard for granting such a motion is strict, and reconsideration will generally be denied unless the

9

moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transportation, Inc.* 70 F.3d 255, 257. "The major grounds justifying reconsideration are "an intervening change of controlling law, the availability of new evidence, or the need to correct clear error or prevent manifest injustice." *Virgin Atlantic Airways, Ltd. V. National Mediation Board*, 956 F.2d 1245, 1255 (2nd Cir. 1995) citing 18 C. Wright, A. Miller & E. Cooper, *Federal Practice & Procedure* Section 4478 at 790.

In rendering both decisions, the Second Circuit cautioned that "a motion to reconsider should not be granted where the moving party seeks solely to relitigate an issue already decided." *Shrader (supra)* at 257. "…[W]here litigants have once battled for the court's decision, they should neither be required, nor without good reason permitted, to battle for it again." *Virgin Atlantic Airways (supra)* at 1255.

### F. The Court Should Deny Defendants' Motion for Reconsideration

The Defendants have made no showing: (i) that there has been an intervening change in the controlling law; (ii) of the availability of new evidence; or (iii) of the need to correct clear error or prevent manifest injustice. Indeed, after identifying the three grounds that justify the granting of a motion for reconsideration,

Defendants failed to present any new controlling law or facts that would satisfy any one of the three grounds. Moreover, Defendants concede that the sole basis for their motion - the Massachusetts state lower court's decision in *Murphy* - is not controlling law.

There are no grounds to justify this Court's reconsideration of its prior denial of Defendants' Motion for Summary Judgment. Accordingly, the Court should deny Defendants' Motion for Reconsideration.

## IV.  Conclusion

For the foregoing reasons, the Plaintiff respectfully requests that the Defendants' motion for relief pursuant to Rule 60(b)(6) and their alternative motion for reconsideration both be denied.

Respectfully submitted,

By  /s/ Ron Michael Meneo
Ron Michael Meneo, Esq.
Federal Bar No. CT06279
Early, Ludwick & Sweeney, LLC
One Century Tower, 11th Floor
265 Church St., PO Box 1866
New Haven, CT  06508-1866
203-777-7799
203-785-1671(fax)

**Counsel for Plaintiff**

11

## CERTIFICATION

This is to certify that a copy of the foregoing was mailed this 29th day of November, 2005 to all counsel listed below.

Joseph P. Thomas, Esq.
Jeffery D. Geoppinger, Esq.
ULMER & BERNE LLP
600 Vine Street, Suite 2800
Cincinnati, Ohio 45202-2409
**Counsel for Defendant**

Thomas H. Winslow, Esq.
The Law Offices of Thomas H. Winslow, LLC
321 Main Street
Farmington, CT 06032-2976
**Local-Counsel for Defendant**

_____
Ron Michael Meneo, Esq.