1

2                     UNITED STATES DISTRICT COURT

3                   WESTERN DISTRICT OF WASHINGTON

4                              AT SEATTLE

5

6

7    IN RE: PHENYLPROPANOLAMINE (PPA)        MDL Docket No. 1407

8    PRODUCTS LIABILITY LITIGATION,          **DURAMED PHARMACEUTICAL
                                             INC.' REPONSES TO
9                                            PLAINTIFFS' MASTER FIRST
                                             SET OF INTERROGATORIES**
10
     This document relates to all actions.
11

12

13

14

15          **DEFENDANT DURAMED PHARMACEUTICALS, INC.'S RESPONSES TO
               PLAINTIFFS' MASTER FIRST SET OF INTEROGATORIES**

16

17          Pursuant to Rule 33 of the Federal Rules of Civil Procedure, Defendant Duramed

18   Pharmaceuticals, Inc. ("Duramed") hereby objects to and responds to Plaintiffs' Master First Set of

19   Interrogatories as follows:

20                              **GENERAL OBJECTIONS**

21

22          1.      Duramed objects to each and every Interrogatory to the extent that it seeks

23   information constituting attorney work product or information that is protected by the attorney-

24   client privilege, the physician-patient privilege, the self-evaluative privilege, the Noerr-

25   Pennington Doctrine, or any other applicable privilege and information that is otherwise immune

26

27

28

EXHIBIT

B

Blumberg No. 5208

or protected from discovery, which privileges Duramed does not waive by answering Plaintiffs' Interrogatories.

2.    Duramed objects to each and every Interrogatory to the extent that it seeks information publicly available on the grounds that such Interrogatories are unduly burdensome.

3.    Duramed objects to Plaintiffs' Instruction 1 to the extent that that it seeks information not in the custody, control, or possession of Duramed, who shall answer and verify its answers to such Interrogatories.  Duramed cannot and will not provide or verify information in the possession of third parties.

4.    Duramed objects to Plaintiffs' Instruction 2 regarding privileged information on the ground that such Instruction seeks information not otherwise required by Case Management Order No. 1 or by the Federal Rules of Civil Procedure to be contained in any privileged log.

5.    Duramed objects to Plaintiffs' Instruction 4 to the extent that it seeks to require Duramed to provide the home addresses and telephone numbers of persons identified in its Interrogatory answers on the grounds that such Instruction (i) seeks information irrelevant to the subject of this lawsuit and not reasonably calculated to lead to the discovery of admissible evidence, (ii) seeks information outside the scope of permissible discovery, and (iii) is unduly burdensome.

6.    Duramed objects to Plaintiffs' Instruction 6 on the grounds that it (i) seeks information readily apparent from the face of the requested documents; and (ii) is unduly burdensome.  In lieu of "identifying a document" in the manner instructed by Plaintiffs or attaching a document to Duramed's responses, to the extent that such documents exist, Duramed shall produce copies of the documents as part of its document production in response to Plaintiffs' Master First Set of Requests for the Production of Documents in accordance with the terms of Case Management Order No. 1 entered by the Court.

7.    Duramed objects to Plaintiffs' Instruction 7 on the grounds that such Instruction is unduly burdensome.  All answers provided by Duramed shall be verified by the appropriate representative of Duramed.

8.    Duramed objects to Plaintiffs' Instruction 8 to the extent that it seeks information protected from discovery by the attorney-client privilege.

9.    Duramed objects to Plaintiffs' Instruction 9 on the grounds that it is unduly burdensome.

10.    Duramed objects to each and every Interrogatory to the extent that it seeks information based upon Plaintiffs' definitions of "Defendant," "You" and "Your" on the grounds that such definitions seek information relating to entities other than Duramed, including such entities' predecessors and successors, and, therefore, (i) are overly broad, unduly burdensome, and oppressive; (ii) seek information not relevant to the subject matter of this action nor reasonably calculated to lead to the discovery of admissible evidence; (iii) seek information regarding products which were not manufactured, distributed, sold, or marketed by Duramed; (iv) seek information not in the possession, custody, or control of Duramed; and (v) are beyond the permissible scope of discovery.

11.    Duramed objects to each and every Interrogatory to the extent that it seeks information based upon Plaintiffs' definition of "document" on the grounds that such definition (i) seeks information not relevant to the subject matter of this action nor reasonably calculated to the lead to the discovery of admissible evidence; and (ii) is overly broad, unduly burdensome, and oppressive.

12.    Discovery is continuing, and Duramed reserves the right to supplement its objections and answers at such time as any additional information requested herein is located.

## INTERROGATORIES

1.     State the corporate name of Defendant, any name under which Defendant does business, and the identity and title of all persons who participated in the preparation of these interrogatory responses, excluding counsel.

**ANSWER:**    Subject to the foregoing General Objections, Duramed states that, at the time it sold the PPA product at issue, its corporate name was Duramed Pharmaceuticals, Inc.  In 2001, Duramed Pharmaceuticals, Inc. merged with Barr Laboratories, Inc.  The manner in which Duramed investigated and obtained responsive information for the discovery requests is protected by the attorney-client privilege and attorney work-product doctrine.

2.     State the division(s), subsidiary or operating unit(s) responsible for the following regarding PPA products:

    a. Product design;

    b. Pre-clinical testing;

    c. Clinical testing;

    d. Regulatory approval and compliance;

    e. Manufacturing;

    f. Marketing;

    g. Labeling;

    h. Promotion; and

    i. Distribution.

**ANSWER:**    Duramed incorporates its General Objections herein by reference.  Duramed specifically objects to this interrogatory to the extent that it is vague, ambiguous, overly broad,

4

and not reasonably limited as to time and scope. In addition, Duramed objects because this interrogatory is not reasonably calculated to lead to the discovery of admissible evidence.

Subject to the foregoing General Objections and specific objections, and without waiving same, Duramed states the following

    a.    Not applicable.

    b.    Not applicable.

    c.    Not applicable.

    d.    Duramed's Regulatory Affairs, Quality Assurance and Quality Control Departments.

    e.    Duramed's Manufacturing Department.

    f.    Duramed's Marketing Department.

    g.    Duramed's Regulatory Affairs Department.

    h.    Duramed's Sales Group.

    i.    Duramed's Materials Management.

3.    Identify the individuals with supervisory and/or managerial responsibilities for the following regarding PPA products:

    a.  Product design;

    b.  Pre-clinical testing;

    c.  Clinical testing;

    d.  Regulatory approval and compliance;

    e.  Manufacturing;

    f.  Marketing;

    h.   Labeling;

    i.   Promotion; and

    j.   Distribution.

**ANSWER:**    Duramed incorporates its General Objections herein by reference. Duramed specifically objects to this interrogatory to the extent that it is vague, ambiguous, overly broad, and not reasonably limited as to time and scope. In addition, Duramed objects to this interrogatory because it is not reasonably calculated to lead to the discovery of admissible evidence.

    Subject to the foregoing General Objections and specific objections, and without waiving same, Duramed states the following:

    a.     Not applicable.

    b.     Not applicable.

    c.     Not applicable.

    d.     Bill Stoltman and John Rapoza were in charge of Regulatory Affairs during the relevant time. Bill Stoltman and Laura Cannon were in charge of the Quality Assurance Department during the relevant time. Jim Banschbach was in charge of the Quality Control Laboratory during the relevant time.

    e.     Allen Marko and Ivan Pusecker.

    f.     Jeff Arrington.

    g.     Bill Stoltman and John Rapoza.

    h.     Chris Arrington and Jeff Arrington.

    i.     Robert Williford.

4.    Identify each PPA product you manufacture or distribute and for each such product, identify the individuals with supervisory and/or managerial responsibilities for:

    a.    Monitoring adverse reactions;

    b.    Monitoring the medical literature regarding PPA safety issues;

    c.    Determining whether the labeling for the product needed to be changed and, if so, implementing any labeling change;

    d.    Determining whether PPA should be removed from the product and if so, implementing any reformulation of the product;

    e.    Interacting or communicating with the Consumer Healthcare Products Association ("CHPA") or the Nonprescription Drug Manufacturer's Association ("NDMA") regarding the safety of PPA;

    f.    Interacting or communicating with other manufacturers of PPA products regarding the safety of PPA;

    g.    Interacting or communicating with FDA regarding the safety of PPA;

    h.    Interacting or communicating with any other State, Federal or Foreign regulatory agency regarding the safety of PPA;

    i.    Conducting any testing in humans or animals regarding the safety of PPA;

    j.    Contracting with any other person or entity to perform any testing in humans or animals regarding the safety of PPA; and

    k.    Communicating or interacting with any person or entity that conducted studies regarding the safety of PPA.

**ANSWER:**    Duramed incorporates its General Objections herein by reference. Duramed specifically objects to this interrogatory to the extent that it is vague, ambiguous, overly broad,

1
2
3
4
5
6

7

and not reasonably limited as to time and scope. In addition, information regarding products not at issue in this litigation is irrelevant and not likely to lead to the discovery of admissible evidence.

Subject to the foregoing General Objections and specific objections, and without waiving same, Duramed states that it manufactured the following products containing PPA: Duratex capsules; Duratex Liquid; DuraHistine Liquid; Durahistine Syrup, and PPA/Guifenesin. In addition, the following individuals had supervisory or managerial responsibilities:

    a.  Bill Stoltman, John Rapoza, Ken Phelps.

    b.  Ken Phelps.

    c.  Bill Stoltman and John Rapoza

    d.  Not applicable.

    e.  Not applicable.

    f.  Not applicable.

    g.  Bill Stoltman and John Rapoza.

    h.  Bill Stoltman and John Rapoza.

    i.  Not applicable.

    j.  Not applicable.

    k.  Not applicable.

6.    Identify and describe any testing done by or on behalf of defendant to determine whether the ingestion of PPA is associated with an increased risk of stroke.

**ANSWER:**    Duramed incorporates its General Objections herein by reference.  Duramed specifically objects to this interrogatory to the extent that it is over broad and not reasonably calculated to lead to the discovery of admissible evidence.

Subject to the foregoing General Objections and specific objections, and without waiving same, Duramed states that it voluntarily discontinued the product at issue in December 1999, and that it performed no such testing.

7.    Ranging from the Chief Executive Officer to the most junior managerial level of your company, identify and describe the chain of command since 1990 for insuring that the labeling of PPA products adequately warned consumers of the risks of PPA products.

**ANSWER:**    Duramed incorporates its General Objections herein by reference.  Duramed specifically objects to this interrogatory to the extent that it is overly broad, and not reasonably calculated to lead to the discovery of admissible evidence.

Subject to the foregoing General Objections and specific objections, and without waiving same, Duramed states that persons in Regulatory Affairs were responsible for insuring that the label on the PPA/Guifenesin product was appropriate.  John Rapoza, Vice President of Regulatory Affairs (July 2000 through December 2001) and William Stoltman, Director, Regulatory Affairs (September 1992 through June 2000).  Duramed will produce its organizational charts for the relevant time period involved with the product at issue.

8.    Ranging from the Chief Executive Officer to the most junior managerial level of your company, identify and describe the chain of command since 1990 for making the decision as to whether PPA should be removed from any of your products for safety reasons.

9

**ANSWER:**    Duramed incorporates its General Objections herein by reference. Duramed specifically objects to this interrogatory to the extent that it is overly broad and not reasonably calculated to lead to the discovery of admissible evidence.

Subject to the foregoing General Objections and specific objections, and without waiving same, Duramed states that it did not consider removing PPA from the product at issue. Duramed voluntarily discontinued the product in December 1999. The following individuals participated in implementing the voluntary discontinuation of its PPA/Guifenesin product:

Herman D. Snyder, Vice President, Trade Relations;

Chris Arrington, Direction, Sales Operations;

Mitch Cullen, Business Director, National Accounts;

Phil Arrington, Senior Director, Sales and Marketing;

Jeff Arrington, President and COO.

The "chain of command" for those individuals is set forth in organizational that are being produced in this case.


9.    Identify each over-the-counter consumer product containing PPA marketed by your company and for each product state:

      a.    The dollar amount spent on all advertising for each such product in each of the years since 1990;

      b.    The dollar sales of each such product in each of the years since 1990;

      c.    The gross profit derived from the sales of each such product in each of the years since 1990; and

d.   The net profit derived from the sales of each such product in each of the years

since 1990.

**ANSWER:**    Duramed incorporates its General Objections herein by reference.  Duramed

specifically objects to this interrogatory to the extent that it is overly broad.  In addition,

Duramed states that the product at issue in this case was a prescription medication.  Therefore,

information related to otc products is irrelevant and not reasonably calculated to lead to the

discovery of admissible evidence.


10.    State whether you have re-formulated any of your PPA products such that they do

not now contain PPA and, if so, state:

a.   The ingredient which was used to replace PPA; and

b.   The cost of reformulating the product without PPA.

**ANSWER:**    Duramed incorporates its General Objections herein by reference.  Duramed

specifically objects to this interrogatory to the extent that it is vague, ambiguous, and not

reasonably calculated to lead to the discovery of admissible evidence.

Subject to the foregoing General Objections and specific objections, and without waiving

same, Duramed states that it did not re-formulate the PPA/Guifenesin product at issue so that it

did not contain PPA.  The product was discontinued in December 1999, and the only re-

formulation of the product at issue did not involve PPA.  Instead, it was re-formulated in 1995 to

delete isopropyl alcohol from the manufacturing process.


11.    State whether at any time between January 1, 1990 and January 1, 2000 you

considered removing PPA from any of your products and, if so, identify:

11

    a.   Any individuals who recommended removing PPA from any of your products;

    b.   Any individuals who made the decision to remove or not remove PPA from any of your products; and

    c.   Any documents relating or referring to any proposed removal of PPA from any of your products.

**ANSWER:**   Duramed incorporates its General Objections herein by reference. Duramed specifically objects to this interrogatory to the extent that it is vague, ambiguous, overly broad and not reasonably calculated to lead to the discovery of admissible evidence. Duramed further objects to the extent this interrogatory seeks information protected from discovery by the attorney-client privilege and/or the work-product doctrine.

Subject to the foregoing General Objections and specific objections, and without waiving same, Duramed states that it is not aware of any considerations to remove PPA from the PPA/Guifenesin product at issue. The product was voluntarily discontinued in December 1999.

12.    State whether at any time between January 1, 1990 and January 1, 2000 you analyzed whether the removal of PPA from any of your products would impact your market share, dollar sales or the cost of production for such product and if so:

    a.   Identify the individuals who performed such analyses;

    b.   Identify the individuals who were informed of the results of such analyses; and

    c.   Identify any documents relating or referring to such analyses.

**ANSWER:**   Duramed incorporates its General Objections herein by reference. Duramed specifically objects to this interrogatory to the extent that it is vague, ambiguous, overly broad, and not reasonably calculated to lead to the discovery of admissible evidence.

Subject to the foregoing General Objections and specific objections, and without waiving same, Duramed states that it did not conduct any such analysis.

12.    As to any government investigation, regulatory action, indictment, information, or criminal charge which has ever been made or brought against Defendant in regard to the promotion, marketing, sale or distribution of any of its drug products, state:

    a.   The Product involved;

    b.   The court, agency and jurisdiction involved;

    c.   The filing date;

    d.   The time period at issue;

    e.   The current status or disposition of the investigation, regulatory action or criminal charge; and

    f.   Any claim, file, court number or other identifying information regarding the investigation, regulatory action or charge.

**ANSWER:**    Duramed incorporates its General Objections herein by reference.  Duramed specifically objects to this interrogatory to the extent that it is overly broad, and not reasonably calculated to lead to the discovery of admissible evidence.

Subject to the foregoing General Objections and specific objections, and without waiving same, Duramed states that it is not aware of any such government investigation, regulatory action, indictment, or criminal charge.

13.    State whether any of your PPA products were marketed outside of the United States. If so, state:

a. The location(s) outside of the United States where each was marketed;

b. The period of time when your PPA products were marketed, sold and/or distributed in each such location outside of the United States;

c. The indications, contraindications and risks reflected in the labeling which accompanied your PPA products when they were marketed in each such location outside of the United States (in English);

d. Whether any foreign government regulatory authority took any action to prohibit or limit the manufacture, sale, distribution or use of your PPA products, identifying the agency involved and the action taken; and

e. Whether any foreign government regulatory authority requested you or any other distributor of PPA products to withdraw such products from the market or restrict their use.

ANSWER:    Duramed incorporates its General Objections herein by reference. Duramed specifically objects to this interrogatory to the extent that it is overly broad, and not reasonably calculated to lead to the discovery of admissible evidence.

Subject to the foregoing General Objections and specific objections, and without waiving same, Duramed states that it distributed its PPA/Guifenesin product in Puerto Rico during at least 1997 through 2000. There were no distributions of that product outside of the United States after approximately May 2000. The PPA/Guifenesin product distributed in Puerto Rico contained the identical package inserts and labels as the product sold in the United Sates. Duramed is unaware of any action by any foreign government regulatory authority to prohibit or limit the manufacture, sale, distribution or use of the product.

14.    With respect to any case of hemorrhagic stroke in any person using any of your PPA products:

    a.    State the date on which you first became aware that any consumer using any of your PPA products suffered a hemorrhagic stroke after using your product;

    b.    State the total number of reports of hemorrhagic stroke reported in consumers using your PPA products;

    c.    Identify each person who furnished and/or received such information;

    d.    State whether each report of such information was provided to the FDA and, if so, when; and

    e.    Identify all documents relating, referring to or embodying such information and/or its reporting to the FDA.

**ANSWER:**    Duramed incorporates its General Objections herein by reference.  Duramed specifically objects to this interrogatory to the extent that it is overly broad, and not reasonably calculated to lead to the discovery of admissible evidence.  Duramed further objects to the extent this interrogatory seeks information protected from discovery by the attorney-client privilege and/or the work-product doctrine.

Subject to the foregoing General Objections and specific objections, and without waiving same, Duramed states that it first became aware that a consumer suffered a hemorrhagic stroke allegedly after using its product on February 4, 2002 when it was served with a lawsuit.  There have been three reports of hemorrhagic stroke.  Duramed first became aware of each of those three at the time it was served with lawsuits.

15.    Identify all documents in your possession custody or control that relate, refer to or embody any studies, tests, analyses or research, including any interim or preliminary reports or data from such studies, conducted by any person or entity regarding hemorrhagic stroke in consumers using any PPA product.

**ANSWER:**    Duramed incorporates its General Objections herein by reference.  Duramed specifically objects to this interrogatory to the extent that it is vague, overly broad, and not reasonably calculated to lead to the discovery of admissible evidence.  Duramed further objects to the extent this interrogatory seeks information protected by the attorney-client privilege and/or work-product doctrine.

Subject to the foregoing General Objections and specific objections, and without waiving same, Duramed states that it voluntarily discontinued the PPA/Guifenisin product at issue in December 1999.  It does not have any such documents in its possession, custody, or control.

16.    State the total amount of insurance which you believe may be available to satisfy any claims which have been made in the past and which may be made in the future against you, your predecessors, successors, and assigns as a result of the use of PPA products.  This requires, without limitation, that you:

a.    Identify each and every general liability, comprehensive general liability, advertising liability or product liability policy (and every other policy which you believe may provide coverage to any personal injury claim asserted in this litigation) that you purchased or on which you are a named insured (including policies purchased by related corporate entities), including all excess layers and/or umbrella policies, for a minimum of the years 1990 through 2000, or for

any additional years in which you manufactured or distributed PPA products, including the policy number, name and address of the insurer who issued the insurance policy and indicate any self-insured retention;

b.   State the type of coverage provided by each such policy (e.g., claims made, occurrence based, etc.);

c.   State the limits of liability per claim and in the aggregate for each such policy;

d.   State the effective dates of each such policy;

e.   State whether each such policy is consuming (e.g., whether payments of counsel fees and defense costs consume the available limits of liability);

f.   State the amounts which have been paid under each such policy and the extent to which such payments have exhausted the aggregate limits of coverage provided by each such policy;

g.   State the name of your risk manager or person most knowledgeable about your insurance coverage for the years 1990 through 2000;

h.   State the name, address and telephone number of your insurance broker(s) for the years 1990 through 2000 for the insurance identified in response to sub-part (a) above;

i.   State whether or not you have tendered any claims or provided notice in this litigation to any insurer or any insurance policy other than those identified in sub-part (a) above.  If so, include the name and address of the insurer and the policy number and, if the policy is issued to anyone other than yourself, the insured under the policy; and

j.   State whether any carrier has notified you of any reservation of rights, and, if so,

identify all documents relating thereto.

**ANSWER:**   Duramed incorporates its General Objections herein by reference.  Duramed

specifically objects to this interrogatory to the extent that it is overly broad, and not reasonably

calculated to lead to the discovery of admissible evidence.

Subject to the foregoing General Objections and specific objections, and without waiving

same, Duramed states that:

a.   Duramed will produce the liability policies that provide the

information requested.

b.   Duramed will produce the liability policies that provide the

information requested.

c.   Duramed will produce the liability policies that provide the

information requested.

d.   Duramed will produce the liability policies that provide the

information requested.

e.   Duramed will produce the liability policies that provide the

information requested.

f.   Duramed will produce the liability policies that provide the

information requested.

g.   Tim Holt and David Furniss.

h.   Duramed will produce the liability policies that provide the

information requested.

i.   No.

18

j.   No.

17.    State the full corporate name and principal address of each entity with whom you are affiliated through common ownership and control.  With respect to each such entity, describe its past and present role in connection with the design, testing, manufacture, marketing, sale and/or distribution of PPA products.

**ANSWER:**    Duramed incorporates its General Objections herein by reference.  Duramed specifically objects to this interrogatory to the extent that it is overly broad, and not reasonably calculated to lead to the discovery of admissible evidence.

Subject to the foregoing General Objections and specific objections, and without waiving same, Duramed states that it is the only entity involved in the manufacture, marketing, sale, and distribution of the PPA product at issue.

18.    Describe your document retention/destruction policies and procedures from 1985 through the present including:

    a.   What documents (including computer files) are routinely discarded and when; and

    b.   How and where you file safety related documents.

**ANSWER**:    Duramed incorporates its General Objections herein by reference.  Duramed specifically objects to this interrogatory to the extent that it is overly broad, and not reasonably calculated to lead to the discovery of admissible evidence.

Subject to the foregoing General Objections and specific objections, and without waiving same, Duramed states that it will produce documents describing its document retention policies.

19. For the period January 1, 1990 through January 1, 2000, please state if you modified the formulation of your PPA products or their labeling due to any concerns about high blood pressure or stroke. If so,

    a. Describe each such modification;

    b. State the dates on which you first notified the FDA of the modification;

    c. State the dates on which each labeling change was implemented in distributed product;

    d. State whether you undertook any efforts to notify or educate consumers about any such re-formulation or labeling change; and

    e. Identify any documents relating or referring to the subject matter of any of the previous subparts of this interrogatory.

**ANSWER:** Duramed incorporates its General Objections herein by reference. Duramed specifically objects to this interrogatory to the extent that it is vague, ambiguous, overly broad, and not reasonably calculated to lead to the discovery of admissible evidence. In addition, Duramed objects to the extent that the information requested is protected by the attorney-client privilege and/or work-product doctrine.

Subject to the foregoing General Objections and specific objections, and without waiving same, Duramed states that it made no such modifications to the formulation. Duramed further states that all labeling documents are being produced.

20. Identify and describe all indemnity agreements, agreements to assume liability, agreements to assume the defense, or any other such agreements between you, your insurer and any

20

other person regarding any claims pertaining to the manufacture and distribution of any of your PPA products.

**ANSWER:**    Duramed incorporates its General Objections herein by reference.  Duramed specifically objects to this interrogatory to the extent that it is overly broad, and not reasonably calculated to lead to the discovery of admissible evidence.

Subject to the foregoing General Objections and specific objections, and without waiving same, Duramed states that, other than its insurance policies that are being produced, it is not aware of any such agreements.

21.    Provide the following information about your company:

a.  The address of your principal place of business;

b.  The identity, by name and title, of your current corporate officers;

c.  The identity of your current board of directors;

d.  State whether your company is owned in material part (50% or greater) by any other persons or entities and, if so, identify the owners and their ownership interests;

e.  Briefly describe your involvement with any other corporation involved the manufacture and distribution of PPA products; and

f.  Provide the most current financial data available regarding your company's:

i.  Gross sales;

ii.  Net income;

iii.  Total assets;

iv.  Cash;

v.   Current assets;

vi.   Current liabilities;

vii.   Equity;

viii.   Long-term debt; and

ix.   Short term debt.

g.   Identify the individual most knowledgeable regarding your financial status.

h.   Identify the individual most knowledgeable regarding your insurance coverage.

**ANSWER:**   Duramed incorporates its General Objections herein by reference.  Duramed specifically objects to this interrogatory to the extent that it is overly broad, and not reasonably calculated to lead to the discovery of admissible evidence.

Subject to the foregoing General Objections and specific objections, and without waiving same, Duramed states that, in 2001 Duramed Pharmaceuticals, Inc. merged with Barr Laboratories, Inc. Barr's principal place of business is in Pomona, New York.  Barr's current management includes the following:

Bruce L. Downey – Chairman of the Board and CEO;

Carole S. Ben-Maimon, M.D. – President and COO of Barr Research, Inc.

Paul M. Bisaro – President and COO

Salah Ahmed, Ph.D. – Senior Vice President, Research and Development

Michael J. Bogda – Senior Vice President, Manufacturing and Engineering

Timothy P. Catlett – Senior Vice President, Sales and Marketing

Catherine F. Higgins – Senior Vice President, Human Resources

Fredrick J. Killion – Senior Vice President and General Counsel

William T. McKee – Senior Vice President, Chief Financial Officer and Treasurer

Christine Mundkur – Senior Vice President, Quality and Regulatory Counsel

Martin Zeiger – Senior Vice President, Strategic Business Development

Lance J. Bronnenkant, Ph.D – President of Research and Development, Operations

Carol A. Cox – Vice President, Investor Relations and Corporate Communications

Charles E. Diliberti, M.S. – Vice President of Scientific Affairs

Suzanne Donaghy – Vice President and Chief Information Officer

Duvid J. Furniss, Vice President, Finance

Phil Gioia – Vice President, Proprietary Sales

Jake Hansen – Vice President, Government Affairs

Howard I. Hait – Vice President, Data Management and Biostatistics for Barr Research

Christopher Mengler, R.Ph. – Vice President, Strategic Planning

Michael Moorshead – Vice President, Manufacturing and Engineering

Wayne S. Mulcahy, Ph.D. – Vice President, Clinical Operations

Amy Niemann – Vice President, Proprietary Marketing

Charlene Polino – Vice President, Strategic Business Development

Tim Sawyer – Vice Presicent, Sales for Generic Products

Robert Williford – Vice President, Human Resources.

Barr's Directors include:  Carole S. Ben-Maimon, Paul M. Bisaro, Harold N. Chefitz, Bruce L.

Downey, Richard R. Frankovic, James S. Gilmore, Jacob M. Kay, Peter R. Seaver, and George

P. Stephan.

    Barr did not and does not manufacture any products containing PPA.  The former

Duramed employees most knowledgeable about insurance are David Furniss and Tim Holt.

David Furniss is the most knowledgeable regarding Duramed's financial status.

22.    Please state the number of lawsuits presently pending against you and/or any of your subsidiaries involving any of your PPA products.  For each such lawsuit, please give the following information:

    a.    The place of jurisdiction, case number and complete caption; and

    b.    The name, firm name, address and telephone number of the lawyer(s) who have filed the case on behalf of each plaintiff.

ANSWER:    Duramed incorporates its General Objections herein by reference.  Duramed specifically objects to this interrogatory to the extent that it is overly broad, and not reasonably calculated to lead to the discovery of admissible evidence.

Subject to the foregoing General Objections and specific objections, and without waiving same, Duramed states that, in addition to this case, there are two cases pending against it.  One case, Spencer v. Duramed et al., is pending in Carteret County, North Carolina (Case No. 02 CVS 137). The second case, Seres v. Duramed et al., is pending in the California Coordinated Proceeding (Case No. 01CC00373, JCCP No. 4166.)

23.    Please state the number of lawsuits that have been settled or dismissed against you and/or any of your subsidiaries involving any of your PPA products.  For each such lawsuit, please give the following information:

    a.    The place of jurisdiction, case number and complete caption;

    b.    The name, firm name, address and telephone number of the lawyer(s) who filed the case on behalf of each plaintiff; and

    c.    The date on which the lawsuit the lawsuit was settled.

**ANSWER:**    Duramed incorporates its General Objections herein by reference.  Duramed specifically objects to this interrogatory to the extent that it is overly broad, and not reasonably calculated to lead to the discovery of admissible evidence.

Subject to the foregoing General Objections and specific objections, and without waiving same, Duramed states that there are no such lawsuits.

24.    State whether between 1990 – 2000 your company had any written codes of conduct or ethical standards regarding the marketing and labeling of drug products and, if so:

    a.    Identify any documents that relate, refer to or embody such codes of conduct or ethical standards;

    b.    State whether your company had any department or office that was charged with the responsibility for determining whether your company complied with such codes of conduct or ethical standards; and

    c.    Identify any officers and/or employees with managerial or supervisory responsibility for determining whether the corporation's conduct was in compliance with such codes of conduct or ethical standards.

**ANSWER:**    Duramed incorporates its General Objections herein by reference.  Duramed specifically objects to this interrogatory to the extent that it is overly broad, and not reasonably calculated to lead to the discovery of admissible evidence.  Duramed further objects to this interrogatory to the extent it seeks information protected by the attorney-client privilege and/or work-product doctrine.

Subject to the foregoing General Objections and specific objections, and without waiving

same, Duramed states that it had no such written codes of conduct or ethical standards relating to the product at issue.  The labels and package inserts for Duramed's products were produced and disseminated in accordance with the laws and regulations of the United States Food and Drug Administration, as well as any applicable state laws and regulations.

25.    State whether between 1990 – 2000 your company belonged to any pharmaceutical manufacturer's trade associations or other groups that had codes of conduct or ethical standards regarding the marketing and labeling of drug products and, if so:

  a.    Identify any documents that relate, refer to or embody such codes of conduct or ethical standards;

  b.    State whether your company had any department or office that was charged with the responsibility for determining whether your company complied with such codes of conduct or ethical standards; and

  c.    Identify any officers and/or employees with managerial or supervisory responsibility for determining whether the corporation's conduct was in compliance with such codes of conduct or ethical standards.

**ANSWER:** Duramed incorporates its General Objections herein by reference.  Duramed specifically objects to this interrogatory to the extent that it is overly broad and not reasonably calculated to lead to the discovery of admissible evidence.

Subject to the foregoing General Objections and specific objections, and without waiving same, Duramed states that it did not have any such affiliation or association.

26

As to objections,

Joseph P. Thomas
Shannon J. Cook
ULMER & BERNE LLP
600 Vine Street, Suite 2800
Cincinnati, Ohio  45202-2409
(513) 762-6209
(513) 762-6245 FAX
jthomas@ulmer.com
scook@ulmer.com

1

## CERTIFICATE OF SERVICE

2

3    I hereby certify that a copy of the foregoing was served via Federal Express on the 6th day of

4    February, 2003, on:

5    Michael J. Luzzi, Esq.
     Early, Ludwick & Sweeney, L.L.C.

6    265 Church Street, 11th Floor
     P.O. Box 1866

7    New Haven, CT  06508-1866
     **Attorneys for Plaintiffs**

8

9    I hereby additionally certify that a copy of the foregoing was served by ordinary U.S. Mail on the
     6th day of February, 2003, upon the following:

10

11   Terry Tottenham, Esq.                      Randolph Sherman, Esq.
     Fulbright & Jaworski                        Kayo Scholer Fierman Hays

12   600 Congress Avenue, Suite 2400             & Handler
     Austin, Texas  78701                        425 Park Avenue

13   **Defendant's Lead Counsel**                New York, New York  10022

14   Joseph Hurson, Esq.                         Arthur Sherman, Esq.
     Lane, Powell, Spears, Lubersky             Sherman Salkow Petoyan & Weber

15   1420 Fifth Avenue, Suite 4100               11601 Wilshire Blvd., Suite 675
     Seattle, Washington  98101-2338             Los Angeles, California  90025

16

17   And                                         And

18   Douglas Hofmann, Esq.                       Richard Lewis, Esq.
     Williams Kastner & Gibbs                    Cohen Milstein Hausfeld & Toll

19   P.O. Box 21926                              1100 New York Avenue, N.W.
     Seattle, Washington  98111-3926             West Tower, Ste. 500

20   **Defendant's Liaison Counsel**             Washington, D.C.  20005-3934
                                                 **Plaintiff's Lead Counsel**

21

22                                               Lance Palmer, Esq.
                                                 Levinson Friedman

23                                               720 3rd Avenue, Suite 1800
                                                 Seattle, Washington  98104-1845

24                                               **Plaintiff's Liaison Counsel**

25

26   213478.1

27

28

                                        28