LEXSEE 2002 US DIST LEXIS 27517

SYLVIA BOUCHARD, et al., Plaintiff, -vs- AMERICAN HOME PRODUCTS CORPORATION, et al., Defendant.

Case No. 3:98 CV 7541

UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OHIO, WESTERN DIVISION

*2002 U.S. Dist. LEXIS 27517*

May 24, 2002, Decided

**SUBSEQUENT HISTORY:** Motion to strike denied by *Bouchard v. Am. Home Prods. Corp., 2002 U.S. Dist. LEXIS 27516 (N.D. Ohio, July 8, 2002)*

**DISPOSITION:** Plaintiff's motion to exclude testimony granted in part and denied in part. Defendants' motions to exclude "certain scientifically unreliable evidence" denied. Defendants' motions to limit testimony denied in part and granted in part. Defendants' motions for partial summary judgment granted.

**COUNSEL:** [*1] For Sylvia Bouchard, Wallace Bouchard, Plaintiffs: Charles M. Murray, Murray & Murray, Sandusky, OH. Margaret M. Murray, Murray & Murray, Sandusky, OH. W. Patrick Murray, Murray & Murray, Sandusky, OH. William H. Bartle, Murray & Murray, Sandusky, OH.

For American Home Products Corporation, Wyeth Laboratories, Inc., Defendants: David R. Cooper, Cooper & Walinski, Toledo, OH. Eric Alexander, Arnold & Porter, Washington, DC. Gerald R. Kowalski, Cooper & Walinski, Toledo, OH. Jack B. Harrison, Frost Brown Todd, Cincinnati, OH. Michael A Sackey, Arnold & Porter, Washington, DC. Peter T. Grossi, Jr., Arnold & Porter, Washington, DC.

For Interneuron Pharmaceuticals, Incorporated, Defendant: Harry T Sigmier, Weston, Hurd, Fallon, Paisley & Howley, Cleveland, OH. Richard V. Evans, Boehl, Stopher & Graves, Louisville, KY. Edward T. Sylvester, Weston Hurd Fallen Paisley & Howley, Cleveland, OH. Jack B. Harrison, Frost Brown Todd, Cincinnati, OH.

**JUDGES:** DAVID A. KATZ, U. S. DISTRICT JUDGE.

**OPINION BY:** DAVID A. KATZ

**OPINION:**

MEMORANDUM OPINION

KATZ, J.

This matter is before the Court on the following motions:

> 1. Plaintiff's motion to exclude testimony of Albert Kolibash (Doc. No. [*2] 50);
> 2. Plaintiff's motion to exclude testimony of Kenneth Manges (Doc. No. 52);
> 3. Plaintiff's motion to exclude testimony of Mark Berger (Doc. No. 54);
> 4. Defendants' motions to exclude "certain scientifically unreliable evidence" (Doc. Nos. 63 & 67);
> 5. Defendants' motions to limit the testimony of Harris Busch (Doc. Nos. 56 & 65);
> 6. Defendants' motions to limit the testimony of Grover Hutchins (Doc. Nos. 57 & 66);
> 7. Defendants' motion to stay *Daubert* proceedings on Grover Hutchins (Doc. No. 122 & 126); and
> 8. Defendants' motions for partial summary judgment (Doc. Nos. 55 & 64).

BACKGROUND

Plaintiff Sylvia Bouchard alleges that from December 1996 to July 1997 she consumed the diet drug dexfenfluramine hydrochloride. n1 Also known as Redux, dexfenfluramine hydrochloride was a prescription drug marketed by Defendant American Home Products ("AHP"). AHP's name has since been changed to "Wyeth." Interneuron Pharmaceuticals, which had ac-

EXHIBIT 2
Blumberg No. 5119

Case 3:02-cv-01001-AWT    Document 89-3    Filed 11/30/2006    Page 2 of 10

Page 2
2002 U.S. Dist. LEXIS 27517, *

quired the right to develop Redux in 1992, is also a Defendant in this action. n2

---

n1 Sylvia's husband, Wallace Bouchard, is also a Plaintiff. Unless specifically noted, "Bouchard" and "Plaintiff" refer only to Sylvia Bouchard.

[*3]

n2 The Defendants will be referred to collectively as "Wyeth."

---

Bouchard filed a complaint in this Court on September 15, 1998. She claimed that her ingestion of Redux had resulted in a number of physical impairments, including cardiac valvular abnormalities, brain damage, and primary pulmonary hypertension. The matter was stayed in this forum and transferred to the Honorable Louis J. Bechtle, Judge of the United States District Court for the Eastern District of Pennsylvania, who was administering multidistrict litigation proceeding No. MDL 1203. In December 1998, Bouchard's aortic and mitral heart valves exhibited significant regurgitation and had to be replaced with mechanical valves. Her case was remanded to this Court on June 22, 2001.

The parties have filed motions to exclude expert testimony pursuant to *Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993)*. The Court heard argument on these motions on April 5, 2002. The Defendants have also filed a motion for summary judgment on Count I of Bouchard's complaint, claiming that her [*4] claim under Ohio's Consumer Sales Practices Act, *O.R.C. § 1345.01* is preempted by Ohio's Products Liability Act, *O.R.C. § 2307.71 et seq.* All motions have been exhaustively briefed, and the parties' contentions are discussed below.

**DISCUSSION**

*I. Expert Testimony*

A. *Daubert* Standard

Both parties have filed motions to exclude expert testimony pursuant to *Federal Rules of Evidence 702 and 703* and *Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993)*. The legal standard to be used in *Daubert* challenges was set forth by Judge Bechtle in his memorandum opinion issued on February 1, 2001:

> *Federal Rule of Evidence 702* obligates judges to ensure that any scientific testimony or evidence admitted is relevant and reliable. *Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 147, 143 L. Ed. 2d 238, 119 S. Ct. 1167 (1999)* (quoting *Daubert, 509 U.S. at 589*). The party offering the expert has the burden of proving admissibility. *Daubert, 509 U.S. at 592 n.10*. The subject [*5] of an expert's testimony must be grounded in the methods and procedures of science and based on more than subjective belief or speculation. *Id. at 589-590*. Further, *Rule 702* requires that expert testimony assist the trier of fact, i.e., it must "fit" the issues in the case by having a "valid scientific connection to the pertinent inquiry." *Id. at 591-92*.
>
> In determining "whether the expert is proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact," the court must assess whether the methodology underlying the testimony is scientifically valid and whether it can properly be applied to the facts in issue. *Id. at 592-93*. Furthermore, the court must examine the expert's conclusions in order to determine whether they can reliably follow from the facts known to the expert and the methodology used. *Heller v. Shaw Indus., Inc., 167 F.3d 146, 153 (3d Cir. 1999)*.
>
> In *Daubert*, the Court identified several factors to assist courts in evaluating whether a scientific theory or methodology constitutes reliable scientific knowledge. These include: whether the theory or technique can be or has been [*6] tested; whether the theory has been subjected to peer review and publication; whether a technique has a known or potential rate of error and whether there are standards controlling the technique's operation; and whether the theory or method has general acceptance in the scientific community. *Daubert, 509 U.S. at 593-94*. These factors "are simply useful signposts, not dispositive hurdles that a party must overcome in order to have expert testimony admitted." *Heller, 167 F.3d at 152*.
>
> In addition, a court should "exclude proffered expert testimony if the subject of the testimony lies outside the witness's area of expertise." 4 Weinstein's Fed. Evid. § 702.06[1], at 702-52 (2000). In

2002 U.S. Dist. LEXIS 27517, *

other words, a party cannot qualify as an expert generally by showing that the expert has specialized knowledge or training which would qualify him or her to opine on some other issue. *Redman v. John D. Brush & Co., 111 F.3d 1174, 1179 (4th Cir. 1997); Barrett v. Atl. Richfield Co., 95 F.3d 375, 382*b (5th Cir. 1996).

Moreover, testimony of an expert that constitutes mere personal belief as to the weight of the evidence invades the province [*7] of the jury. *McGowan v. Cooper Indus., Inc., 863 F.2d 1266, 1273 (6th Cir. 1987); STX, Inc. v. Brine, Inc., 37 F. Supp. 2d 740, 768 (D.Md. 1999)* (quotation omitted), *aff'd,232 F.3d 915, 2000 WL 564010 (Fed. Cir. 2000); Sec. & Exch. Comm'n v. Lipson, 46 F. Supp. 2d 758, 763 (N.D. Ill. 1998)*.

Lastly, the court "should also be mindful of other applicable rules." *Daubert, 509 U.S. at 595. Federal Rule of Evidence 703* "provides tha texpert opinions based on otherwise inadmissible hearsay are to be admitted only if the facts and data are 'of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject.'" *Id.* (quoting *Fed. R. Evid. 703*). Under *Rule 703*, "if the underlying data are so lacking in probative force and reliability that no reasonable expert could base an opinion on them, an opinion which rests entirely upon them must be excluded." *In re Paoli RR. Yard PCB Litig., 35 F.3d [717,] 748* (quoting *In re "Agent Orange" Prod. Liab. Litig., 611 F. Supp. 1223, 1245 (E.D.N.Y. 1985)*. [*8]

*In re Diet Drugs Prod. Liab. Litig., 2001 U.S. Dist. LEXIS 1174, No. MDL 1203, 2001 WL 454586, at *5-6 (E.D. Pa. Feb. 1, 2001)* (footnotes omitted).

B. Effect of *Daubert* Rulings from MDL 1203

Prior to consideration of the *Daubert* motions pending in the instant action, the Court finds it prudent to note the expert witness precedent set in the multidistrict transferee court. First, this Court recognizes the potential problems that may arise from the redaction and truncation of the preservation depositions and from the question of admissibility of documents. This Court is also mindful that the transferee court held that the *Daubert* rulings in that court "may ultimately be of final and uniform value in many, many cases but is not likely to be an all encompassing ruling that provides final and clear lines of admissibility with regard to all aspects of these witnesses' testimony in all cases." *In re: "Diet Drugs," 2001 U.S. Dist. LEXIS 1174, 2001 WL 454586, at *1-2.*

The transferee court made other specific rulings on admissibility. Of those rulings, the only one relevant to the instant motions is the decision on testimony related to Wyeth's corporate [*9] intent.

> Any proffered *expert* testimony concerning the intent of [Wyeth] or any other entity (such as the FDA) shall be excluded on the basis that the question of intent is to be determined by the jury, not experts; and . . . the otherwise admissible evidence of the intent of [Wyeth] or FDA leadership or personnel [is not excluded].

*2001 U.S. Dist. LEXIS 1174, [WL] at *2.*

With these decisions in mind, the Court will proceed to motions to exclude specific experts and testimony.

C. Medical Experts

1. Albert J. Kolibash, M.D.

Bouchard has moved to exclude the testimony of cardiologist Albert J. Kolibash, M.D. Bouchard claims that Dr. Kolibash will testify that Bouchard had a pre-existing valvular heart disease prior to her use of Redux, and that there is insufficient evidence to link her use of Redux with subsequent valvular heart disease. Bouchard argues that Dr. Kolibash reached his opinion by refusing to consider the possibility that ingestion of Redux could cause valvular heart disease, that his testimony is unreliable and unhelpful to the trier of fact, and that his proposed testimony is outside his area of expertise.

While Bouchard does not contest that Dr. Kolibash is a qualified [*10] cardiologist, she claims that the testimony he intends to offer involves opinions based on pharmacology and pathology. Furthermore, she points out that Dr. Kolibash does not publish frequently, and that his opinion on the pathology of Bouchard's heart is based on an evaluation done by another physician.

Bouchard has also taken issue with Dr. Kolibash's conclusion that her progressive valve disease was caused by a pre-existing valvular condition. According to Dr. Kolibash, this pre-existing condition is evidenced by documentation of an early systolic heart murmur and the possibility of a rheumatic episode. The reliability of Dr.

Kolibash's differential diagnosis of Bouchard's valvular condition is also called into question by Bouchard, who claims that it was arrived at without elimination of a number of contributing factors to her condition and without mention of why those factors were not eliminated.

Finally, Bouchard maintains that Dr. Kolibash's testimony is unhelpful to the jury because it is merely an "alternate theory of causation" that offers nothing of substance to the jury. This alternate theory is unhelpful, Bouchard contends, because it is unsupported by any experimental, [*11] statistical, or other scientific data.

Wyeth disagrees. It claims that Dr. Kolibash has concluded that Bouchard's valve disease was related to her family history and other risk factors including her hypertension and some form of rheumatic fever. Wyeth also points out that Dr. Kolibash's opinion is based on over twenty five years of experience that has included clinical and academic components. Furthermore, Wyeth asserts, Dr. Kolibash's methodology is sound because his diagnosis was reliant on pathology and echocardiographic reports of the type that are normally relied upon by experts in his field. Finally, Wyeth concludes that the only real reason that Bouchard has for the exclusion of Dr. Kolibash's opinion is that it conflicts with that presented by Bouchard's own experts.

Wyeth's argument is well-taken. Examination of Dr. Kolibash's opinion indicates that while he may have discounted ingestion of Redux as a possible cause of Bouchard's valvular disorder, he gave valid reasons for having done so. Moreover, there is no indication that Dr. Kolibash arrived at his opinion in a manner that leads this Court to question his methodology. To the extent that Dr. Kolibash will testify as [*12] to damage to Bouchard's heart, his extensive background as a cardiologist certainly allows him to do so. Finally, Dr. Kolibash's alternative theory of causation could be helpful to the jury.

All of Bouchard's many objections to introduction of Dr. Kolibash's testimony go to weight, not validity. The Plaintiff's motion to exclude the testimony of Dr. Kolibash will be denied.

2. Harris Busch, M.D., Ph.D.

Dr. Busch is a professor of medicine and pharmacology at the Baylor College of Medicine. Wyeth claims that Dr. Busch's career focused on cancer research, not cardiology or diet drugs, and that he is therefore unqualified to testify on the following matters:

1. FDA regulations and procedures and Wyeth's compliance therewith;

2. the adequacy of labeling for Pondimin and Redux;

3. the standard of care among pharmaceutical companies, including the adequacy of Wyeth's adverse event reporting system;

4. the risk-benefit analysis for Pondimin and Redux; and

5. the "corporate intent" of AHP

Dr. Busch's ability to testify to each of these matters is discussed below.

a. Compliance with FDA Regulations and Procedures

In its initial memorandum in support of its motion to exclude [*13] Dr. Busch's testimony, Wyeth argues that he should be excluded from offering testimony related to the adequacy of FDA regulations concerning such things as the approval of new drugs, post-marketing surveillance of pharmaceutical products, and labeling of pharmaceutical products. In Bouchard's response, however, she acknowledges that Dr. Busch is not an expert on FDA rules, and instead suggests that his testimony concerning FDA regulations and procedures will focus on what information Wyeth should have shared with the FDA to allow it to adequately design the Redux label. In its reply, Wyeth contends that even this proposed testimony should be excluded because Dr. Busch is not an expert on FDA regulations.

Wyeth's argument is well-taken. Without a solid underpinning in FDA regulations, Dr. Busch appears ill-equipped to offer expert testimony concerning the sufficiency of information used to comply with those regulations. While he does have some experience in the labeling field, apparently through consulting work performed for other pharmaceutical companies, the Court is not convinced that work is sufficient to make him an expert here.

Wyeth's motion to exclude Dr. Busch's testimony [*14] will be granted with respect to compliance with FDA regulations and procedures.

b. Adequacy of Labeling for Pondimin and Redux

Dr. Busch intends to testify that Wyeth inadequately reported to the FDA the number of deaths resulting from primary pulmonary hypertension ("PPH") that arose from the use of Pondimin and Redux. Bouchard argues that this testimony does not go to the adequacy of the labeling of the drugs, but to the accuracy of the information provided. Therefore, she concludes, expert knowledge of FDA regulations is unnecessary to provide testimony concerning whether certain tests should have been disclosed to the FDA. Wyeth counters that Dr. Busch is not qualified to testify as an expert on this matter because his

Case 3:02-cv-01001-AWT    Document 89-3    Filed 11/30/2006    Page 5 of 10

Page 5
2002 U.S. Dist. LEXIS 27517, *

only experience involves educating himself on warnings issues in contemplation of litigation.

To the extent that Dr. Busch intends to offer testimony that certain information should have been provided to the FDA for inclusion on labeling materials, he does not appear any more qualified to offer that information than he is qualified to offer expert testimony on FDA labeling in general. That testimony will therefore be excluded.

c. Pharmaceutical Standard of Care [*15] and Notice

Wyeth objects to allowing Dr. Busch to testify about the proper standard of care to be applied to a pharmaceutical company. It also objects to expert testimony related to the effect that Redux, as an anorexigen, could have on PPH, given knowledge about the potential effect that other anorexigens (particularly Aminorex) have had on PPH in the past. Wyeth also points out that the transferee court previously excluded testimony about the relationship between Redux and other anorexigens. *See In re Diet Drugs I, 2000 U.S. Dist. LEXIS 9037, 2000 WL 876900, *10.* Furthermore, the Defendant argues that any testimony given by Dr. Busch related to the mechanism by which Redux allegedly causes PPH would be pure speculation and is unsupported by peer-reviewed evidence. Finally, Wyeth alleges that Dr. Busch's testimony would merely involve "parroting" information he obtained through other literature, something that this Court has previously found to be unreliable. *See Mercurio v. Nissan Motor Corp., 81 F. Supp. 2d 859, 863 (N.D. Ohio 2000)* (Katz, J.).

Bouchard claims that Dr. Busch's testimony will not focus on the standard of care in the pharmaceutical industry; therefore, to [*16] the extent that Wyeth seeks to exclude such testimony, its motion will be granted. Bouchard still asserts, however, that Dr. Busch is qualified to offer expert testimony on the relationship between Redux and other anorexigens, because, unlike the expert rejected by the transferee court, Dr. Busch is a pharmacologist, not a cardiologist.

Dr. Busch's testimony on the relationship of Redux with other anorexigens will be excluded. Although Dr. Busch is a reputable pharmacologist, there is no indication that his experience with anorexigens extends beyond that gleaned from review of the literature.

d. Risk-benefit analysis of Pondimin and Redux

Bouchard intends to offer Dr. Busch's expert testimony regarding the potential risks and benefits related to the use of Redux given the relevant medical literature and test results that existed when Redux was prescribed to Bouchard. Wyeth maintains that Dr. Busch is not qualified to offer this expert testimony because he has relied only on his personal, subjective standards in determining risk-benefit, rather than using a method already accepted in the scientific community.

Wyeth's motion in limine to exclude Dr. Busch's testimony on a risk-benefit [*17] analysis will be denied. Dr. Busch's extensive career as a pharmacologist and obesity lecturer gives him the appropriate background to give useful testimony on the complex information used to evaluate the effects of Pondimin and Redux on different patients over the course of time. Dr. Busch is also equipped to compare the risks of use of Pondimin and Redux with those associated with either the use of other diet drugs or with continued obesity.

e. "Corporate Intent"

The transferee court held that expert opinion testimony about Wyeth's corporate intent is inadmissible. Bouchard attempts to distinguish the testimony of Dr. Busch by stating that rather than testify as to "intent" or "state of mind," he will offer his expert opinion about "the content or significance of certain [Wyeth] corporate documents, when this testimony deals with scientific, technical, or specialized knowledge within the sphere of his expertise." (Doc. No. 96 at 14). This Court fails to see how this is distinguishable from just the sort of evidence excluded by the transferee court. The Defendants' motion to exclude this testimony will be granted.

3. Grover Hutchins, M.D.

Wyeth has filed a motion to limit the [*18] testimony of Grover Hutchins, M.D., a pathologist who will be called by Bouchard to testify that her valve injury was a consequence of her treatment with Redux. Wyeth claims that Dr. Hutchins's testimony should be limited to his opinions expressed prior to his publication of an article discussing his participation in diet drug litigation. *See* Keither Volmar and Grover Hutchins, *Aortic and Mitral "Fen-Phen" Valvulopathy" in 64 Patients Treated with Anorectic Agents,* 125 Arch. Pathol. Lab. Med. 1555 (2001) ("the Volmar article"). In the event that Dr. Hutchins is allowed to testify to conclusions and methodology contained in the Volmar article, Wyeth has requested that the *Daubert* proceedings with respect to Dr. Hutchins be stayed until Wyeth has had an opportunity to depose Dr. Hutchins on these new opinions.

The Court agrees that further deposition of Dr. Hutchins is necessary before a Daubert ruling may be made. Accordingly, the Plaintiffs are ordered to make Dr. Hutchins available for supplemental deposition, the scope of which should be limited to opinions, methodology, and additional bases for opinion related to the Volmar article. Wyeth's motion to limit Dr. Hutchins' [*19] testimony will be denied with leave to refile following deposition,

and the motion to stay *Daubert* proceedings will be denied as moot.

D. Economic Experts

1. Kenneth J. Manges, Ph.D.

Bouchard has moved to exclude the testimony of Wyeth's vocational expert, Kenneth J. Manges, Ph.D., in whole or in part. Dr. Manges is a licensed psychologist with a Ph.D. in Counseling and Personnel Services. Bouchard claims that if given the opportunity Dr. Manges will testify that Bouchard can perform sedentary work and that she has lost twenty percent of her ability to perform household services.

Dr. Manges' testimony should be excluded, Bouchard argues, because it is based on insufficient information, faulty methodology, and unsubstantiated conclusions. She also contends that Dr. Manges was not retained to opine concerning her capacity to perform household duties and should therefore not be allowed to offer that testimony.

a. Dr. Manges' Methodology

Bouchard has raised two challenges to Dr. Manges' methodology. First, she argues that his conclusions are faulty because he did not evaluate all available information before making his diagnosis. She also claims, more specifically, that Dr. Manges' [*20] opinion is flawed because it relied on Bouchard's own estimation of the amount that she was required to lift during prior testing; Dr. Manges never independently verified this amount.

Wyeth argues that neither challenge raised by Bouchard, even if true, would be fatal to introduction of Dr. Manges' expert testimony. Wyeth points out that Dr. Manges' opinion was based on information up to May 2001, and that "weaknesses in the factual basis of an expert witness' opinion . . . bear on the weight of the evidence rather than on its admissibility." *See McLean v. 988011 Ontario, Ltd., 224 F.3d 797, 801 (6th Cir. 2000)* (citation omitted). Furthermore, Bouchard has not shown why an expert in Dr. Manges' field may not rely on the plaintiff's own statements when making an evaluation.

The Court is not convinced that Dr. Manges' methodology is faulty. If Bouchard believes that he did not examine sufficient evidence to support his opinion, or believes that he ignored evidence that would have required him to substantially change his opinion, that is a fit subject for cross-examination, not a grounds for wholesale rejection of the expert opinion.

b. Dr. Manges' Opinion on Bouchard's [*21] Motivation

Bouchard would like to limit any testimony by Dr. Manges that she is not employed partially because she is not motivated to find employment. She argues that this conclusion is based only on Dr. Manges finding that she was not interested in participating in the interview and tests associated with Dr. Manges' evaluation, and that any testimony should therefore also be limited to her willingness to participate in the evaluation.

Wyeth argues that Bouchard has misinterpreted Dr. Manges' deposition testimony, and that Dr. Manges has separate opinions of Bouchard's motivation for examination and her motivation for employment. Wyeth's position is supported by Dr. Manges' expert report and by testimony he gave during his deposition:

> [Bouchard] describes herself as medically retired and therefore not working nor looking for work. She does a wide variety of activities on a daily basis . . . . Her activities are consistent with someone performing some sedentary jobs and some sedentary alternating with light physical demand work . . . . Although not working and not motivated to pursue work, Mrs. Bouchard does have the ability to perform work, if she were motivated and the [*22] work was within her physical ability.
>
> . . . .
>
> Overall, it was this examiner's opinion that Mrs. Bouchard's performance suggested evasiveness and a minimal motivation to participate in the testing experience. That is, when faced with a difficult or challenging question, she was more likely than not willing to give up than to make an attempt at answering.

(Manges Report at 7).

> [Plaintiff's Counsel] Q: Dr. Manges, [in your report] you state that although not working and not motivated to work . . . . Upon what do you base your opinion that Ms. Bouchard is not motivated to work?
> [Dr. Manges] A: Her statements.
> Q: Can you be more specific?
> A: I'm medically retired.
> Q: Are you saying that Ms. Bouchard is not motivated to work at this point in time or Ms. Bouchard has never been motivated to work?
> A: At this point in time, when I saw her.

(Manges Dep. at 58-59).

Even a cursory examination of this exchange indicates that Bouchard's position is valid only if Dr. Manges' deposition testimony is taken out of context. Any inconsistency that Bouchard believes exists with respect to Dr. Manges' testimony on Bouchard's motivation to work may be addressed during [*23] cross-examination.

c. Dr. Manges' Opinion on Bouchard's Capacity to Perform Household Services

Finally, Bouchard argues that Dr. Manges should not be permitted to opine that Bouchard's ability to perform household services has been reduced by twenty percent. She claims that his opinion is unreliable because it is based solely on Bouchard's own estimation of how completely she is able to perform certain activities, and because there is no mathematical basis for the opinion. Furthermore, she contends that Dr. Manges was not retained to offer an opinion regarding Bouchard's ability to do housework, and that he is not qualified to do so. Finally, Bouchard argues that assignment of a percentage to her ability to do chores is not relevant.

Wyeth claims that Dr. Manges' opinion on Bouchard's ability to perform homemaking services is based on the same methodology used to determine her ability to perform other types of physical labor. Furthermore, the type of data used by Dr. Manges in making his evaluation, including the plaintiff's own testimony, is the same type of data that is commonly relied upon by experts in that field. Dr. Manges' testimony concerning the percentage of reduction [*24] is relevant, maintains Wyeth, because Bouchard has requested damages partially based on her inability to perform household services subsequent to her ingestion of Redux.

Wyeth's argument is well-taken. Bouchard has put forth no reason why a vocational expert may not rely on statements made by the evaluation subject. She has also not convinced the Court that Dr. Manges is unqualified to evaluate her ability to perform household services. While there may be some question about Dr. Manges' ability to reduce his evaluation of Bouchard's abilities to a definite percentage, there is no indication that such is not the general practice in his field, or that he should have relied on some other methodology when doing so. As with all of Bouchard's other objections to Dr. Manges' testimony, these concerns may also be adequately addressed through cross-examination.

Bouchard's motion to exclude or limit the testimony of Dr. Manges will be denied.

2. Mark C. Berger, Ph.D.

From 1969 to 1999, Bouchard worked as a production worker for Delphi Chassis Systems and its antecedents. Between 1993 and 1998 (her last full year of employment, when she was fifty-one years old), Bouchard's earnings ranged [*25] from $ 52,893 to $ 75,902. Mark Berger is an economist who, if permitted, will testify that Bouchard's expected lost labor market compensation allegedly resulting from her Redux-related disability is a total of $ 47,536, assuming (among other things) that Bouchard would have retired at age sixty-six.

In her final *Daubert* motion, Bouchard has moved to exclude Berger's testimony. She claims that Berger's testimony is unreliable because it is based on flawed methodology and is not relevant to the facts of the case. Specifically, she objects to Berger's reduction of her anticipated wages based on his guess that the automobile industry will experience a decrease in demand for labor. She also objects to Berger's assumption that there is only a vanishingly small possibility that she would have continued to work at an auto assembly plant even if she had not taken Redux. Wyeth argues that Berger's methodology is sound because it is based on published government data and on the opinions given by medical and vocational professionals in this case.

Bouchard's motion is well-taken. In his report, Berger assumes that even without any impairments that are allegedly related to her use of Redux, [*26] Bouchard would be severely disabled. Put another way, Berger assumes that Bouchard would have been just as disabled without using Redux as she claims to be after having used the drug. Then, using data provided by the U.S. Census Bureau, Berger assumes that Bouchard, like an average severely disabled woman of her age and educational level, would have had only a five percent chance of working full-time each year. Accordingly, Berger then credits Bouchard with only one-twentieth of what her expected income for any given year would otherwise have been. n3

---

n3 Berger's analysis includes other calculations based on anticipated part-time and household work. In light of the ultimate exclusion of Berger's testimony, these calculations are not relevant. Also not relevant are the apparently unfounded reductions that Berger applies (sometime more than once) to Bouchard's anticipated wages and hours based on his beliefs about the health of the automobile industry.

---

Berger's qualifications, methodology and analysis are inadequate. [*27] First, he points to no evidence

other than his own assumption that Bouchard would have been severely disabled in the absence of her Redux-related impairments. While he does list symptoms discussed by the medical professionals in this case, Berger is not a medical professional himself and is not qualified to made a determination of disability.

Even more important than Berger's ability to decide that Bouchard would be disabled without the use of Redux is his almost complete disregard for the specific facts of this case. As pointed out by Bouchard, testimony on loss of earnings "must be accompanied by a sufficient factual foundation before it can be submitted to the jury." *Elcock v. Kmart Corp.*, 233 F.3d 734, 754 (3d Cir. 2000). "An economist's testimony concerning a reliable method for assessing future economic losses can be deemed relevant only insofar as a jury can usefully apply that methodology to the specific facts of a particular case." *Id. at 756*.

This case is about Bouchard. It is not about an average disabled woman of her age and education. There is no indication in the record that the conditions that Berger assumes would give Bouchard a one-in-twenty [*28] chance to work full-time each year prevented her from holding a full-time job in all years prior to the onset of her allegedly Redux-related disability. Berger's anticipated testimony distorts the underlying facts of the case and would be unhelpful to the jury. Bouchard's motion to exclude his testimony will be granted.

E. Wyeth's "Motion to Exclude Certain Scientifically Unreliable Evidence"

Wyeth has moved that the Court exclude:

> any and all evidence suggesting that . . . Bouchard's use of Redux (dexfenfluramine) caused, exacerbated, or likely will cause her to suffer pulmonary hypertension, primary pulmonary hypertension, neurotoxicity or brain damage, or coronary artery disease. In addition, [Wyeth] seeks to exclude unreliable evidence purporting to support a relationship between Mrs. Bouchard's use of Redux and her heart valve problems.

(Doc. No. 63).

In its motion, Wyeth broadly argues that evidence pertaining to a number of Bouchard's allegations should be dismissed because it does not find support in medical literature. With only slight exception (Dr. Busch, addressed above), Wyeth does not attack any particular expert, but instead attacks what it anticipates [*29] to be a lack of causation evidence for Bouchard's claims.

Wyeth's motion is without merit. The existence of peer-reviewed publications in support of an expert's testimony is but one indicium of *Daubert* reliability. See *Heller*, 167 F.3d at 152. Were that not the case, it would likely be sufficient in all cases to dispense with expert testimony and merely present the relevant literature to the jury. The motion will be denied. If Wyeth believes that Bouchard is unable to set forth evidence to support her claims, that contention is better made in a motion for summary judgment.

*II. Motion for Summary Judgment*

A. Summary Judgment Standard

As an initial matter, the Court sets forth the relative burdens of the parties once a motion for summary judgment is made. Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986). Of course, the moving party always bears the initial responsibility [*30] of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact. *Id. at 323*, 106 S. Ct. at 2553. The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S. Ct. 2505, 2511, 91 L. Ed. 2d 202 (1986) (quoting Fed. R. Civ. P. 56(e)).

Once the burden of production has so shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is not sufficient "simply [to] show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986). Rather, Rule 56(e) "requires the nonmoving party to go beyond the [unverified] pleadings" and present some type of evidentiary material [*31] in support of its position. *Celotex*, 477 U.S. at 324, 106 S. Ct. at 2553. Summary judgment shall be rendered if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Fed. R. Civ. P. 56(c)*.

B. Count I - Ohio Consumer Sales Practices Act

In Count I of her complaint, Bouchard alleges that Wyeth, as a supplier of Redux, violated the Ohio Consumer Sales Practices Act, O.R.C. § 1345.01, (the "OCSPA"), through deceptive representations that Redux "was of a particular standard, quality, grade or prescription." Count I also alleges that Wyeth made a "misleading statement of opinion on which the consumer was likely to rely to his/her detriment." Finally, Count I alleges that Wyeth "should have taken affirmative steps to warn consumers" of the potential deleterious effects of Redux.

Wyeth argues that any claim Bouchard may have based on the CSPA is preempted by the Ohio Products Liability Act, O.R.C. § 2307.71 et seq., (the "PLA"), which is the [*32] exclusive statutory remedy for claims like those set forth by Bouchard. In support of its argument Wyeth has set forth this Court's decision in *Schnell v. American Home Prods. Corp.*, No. 3:00-CV-7228 (N.D. Ohio July 11, 2000) (Katz, J.).

The PLA was adopted by the Ohio legislature in 1988. It defines a product liability claim as:

> [A] claim that is asserted in a civil action and that seeks to recover compensatory damages from a manufacturer or supplier for death, physical injury to person, emotional distress, or physical damage to property other than the product in question, that allegedly arose from any of the following:
>
> (1) The design, formation, production, construction, creation, assembly, rebuilding, testing, or marketing of that product;
>
> (2) Any warning or instruction, or lack of warning or instruction, associated with that product;
>
> (3) Any failure of that product to conform to any relevant representation or warranty.

In *Schnell,* this Court held that the plaintiff's claim under the OCSPA was preempted by the PLA, because the PLA "addresses personal injury which arises from marketing, a lack of warning, or failure of the product to conform to any relevant [*33] representation or warranty." *Schnell* at 4. The allegations of *Schnell* appear, at least for the purposes of this motion for partial summary judgment, to be indistinguishable from those of the instant case, and Bouchard has given no reason why the Court should not follow its prior holding; in fact, Bouchard has not addressed *Schnell* at all.

Count I of Bouchard's complaint, which attempts to state a claim under the OCSPA, is preempted by the Ohio Products Liability Act. Wyeth's motion for partial summary judgment on that count will therefore be granted.

### CONCLUSION

1. Plaintiff's motion to exclude testimony of Albert Kolibash (Doc. No. 50) will be denied.
2. Plaintiff's motion to exclude testimony of Kenneth Manges (Doc. No. 52) will be denied.
3. Plaintiff's motion to exclude testimony of Mark Berger (Doc. No. 54) will be granted.
4. Defendants' motions to exclude "certain scientifically unreliable evidence" (Doc. Nos. 63 & 67) will be denied.
5. Defendants' motions to limit the testimony of Harris Busch (Doc. Nos. 56 & 65) will be denied with respect to risk-benefit analysis and granted with respect to all other parts.
6. Defendants' motions to limit [*34] the testimony of Grover Hutchins (Doc. Nos. 57 & 66) will be denied with leave to refile by June 20, 2002, ten (10) days for response.
7. Defendants' motions to stay *Daubert* proceedings (Doc. Nos. 122 & 126) will be denied as moot.
8. Defendants' motions for partial summary judgment (Doc. Nos. 55 & 64) will be granted.

IT IS SO ORDERED.

5/24/02

DAVID A. KATZ

U. S. DISTRICT JUDGE

JUDGMENT ENTRY

KATZ, J.

For the reasons stated in the Memorandum Opinion filed contemporaneously with this entry, IT IS HEREBY ORDERED, ADJUDGED, and DECREED that Plaintiff's motion to exclude testimony of Albert Kolibash (Doc. No. 50) is denied.

FURTHER ORDERED that Plaintiff's motion to exclude testimony of Kenneth Manges (Doc. No. 52) is denied.

FURTHER ORDERED that Plaintiff's motion to exclude testimony of Mark Berger (Doc. No. 54) is granted.

FURTHER ORDERED that Defendants' motions to exclude "certain scientifically unreliable evidence" (Doc. Nos. 63 & 67) is denied.

FURTHER ORDERED that Defendants' motions to limit the testimony of Harris Busch (Doc. Nos. 56 & 65) is denied with respect to risk-benefit analysis and is granted in all other respects.

FURTHER ORDERED that Defendants' [*35] motions to limit the testimony of Grover Hutchins (Doc. Nos. 57 & 66) are denied with leave to refile by June 20, 2002 with ten (10) days for response.

FURTHER ORDERED that Defendants' motions to stay *Daubert* proceedings (Doc. Nos. 122 & 126) are denied as moot.

FURTHER ORDERED that Defendants' motions for partial summary judgment (Doc. Nos. 55 & 64) are granted.

DAVID A. KATZ

U. S. DISTRICT JUDGE