


Service: **Get by LEXSEE®**
Citation: **2006 U.S. Dist. LEXIS 10296**

*2006 U.S. Dist. LEXIS 10296, **

DAVID BELLIS, Plaintiff, -against- THE TOKIO MARINE AND FIRE INSURANCE COMPANY, LTD., AND CHUBU-NIPPON BROADCASTING COMPANY, LTD., Defendants, THE TOKIO MARINE AND FIRE INSURANCE COMPANY, LTD., AND CHUBU-NIPPON BROADCASTING COMPANY, LTD., Third-Party Plaintiffs, -against- J. ALASTAIR DUNCAN, J. ALASTAIR DUNCAN, LTD., ARTHUR FEMENELLA AND THE ASSOCIATION OF RESTORATION SPECIALISTS, INC., Third-Party Defendants.

93 Civ. 6549 (DAB)

UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK

2006 U.S. Dist. LEXIS 10296

March 14, 2006, Decided
March 14, 2006, Filed

**PRIOR HISTORY:** Bellis v. Tokio Marine & Fire Ins. Co., 2004 U.S. Dist. LEXIS 13885 (S.D.N.Y., July 15, 2004)

**CORE TERMS:** causation, inspected, methodology, expert testimony, admissibility, inspection, cracked, scientific, reliable, crates, museum, curator, crack, expert opinion, trier of fact, utilized, specialized knowledge, exhibition, reliability, unreliable, proffered, drawing, jurors, testifying, acetates, affixed, glass, tape, blue, red

**COUNSEL:** **[*1]** For David Bellis, Plaintiff: Raymond A. Bragar, Bragar, Wexler, Eagel & Morgenstern, P.C., New York, NY.

For The Tokio Marine, Chubu-Nippon Broadcasting Co., Ltd., Defendants: Barry L. Gerstman, Sedgwick, Detert, Moran & Arnold, LLP, New York, NY; James Montgomery McCullough, III, Joseph Anthony Oliva, The Law Office of Andrew A. Rowe, Brooklyn, NY.

For Chubu-Nippon Broadcasting Co., Ltd., The Tokio Marine, ThirdParty Plaintiffs: Barry L. Gerstman, Sedgwick, Detert, Moran & Arnold, LLP, New York, NY.

For J. Alastair Duncan, J. Alastair Duncan, Ltd., ThirdParty Defendants: Dennis Michael Flaherty, Glenn F. Ostrager, Ostrager, Chong, Flaherty & Broitman, P.C., New York, NY.

For Arthur Femenella and the Association of Restoration Specialists, Inc., ThirdParty Defendant: Marc Howell Pillinger, Kuczinski, Vila, Tarallo, Pillinger & Miller, LLP, Elmsford, NY; Paul Edward Svensson, Boeggeman, George, Hodges & Corde, P.C., White Plains, NY; Richard G. Corde, Boeggeman, George, Jannace & Hodges, P.C., White Plains, NY.

For Chubu-Nippon Broadcasting Co., Ltd., The Tokio Marine, Counter Claimants: Barry L. Gerstman, Sedgwick, Detert, Moran & Arnold, LLP, New York, NY. **[*2]**

For David Bellis, Counter Defendant: Raymond A. Bragar, Bragar, Wexler, Eagel & Morgenstern, P.C., New York, NY.

For Chubu-Nippon Broadcasting Co., Ltd., The Tokio Marine, Counter Defendants: Barry L.

Gerstman, Sedgwick, Detert, Moran & Arnold, LLP, New York, NY.

For Arthur Femenella and the Association of Restoration Specialists, Inc., Cross Claimant: Marc Howell Pillinger, Kuczinski, Vila, Tarallo, Pillinger & Miller, LLP, Elmsford, NY.

For J. Alastair Duncan, Ltd., J. Alastair Duncan, Cross Defendants: Dennis Michael Flaherty, Glenn F. Ostrager, Ostrager, Chong, Flaherty & Broitman, P.C., New York, NY.

For Arthur Femenella and the Association of Restoration Specialists, Inc., Counter Claimant: Marc Howell Pillinger, Kuczinski, Vila, Tarallo, Pillinger & Miller, LLP, Elmsford, NY.

For Nippon Express U.S.A., Inc., Counter Claimant: Robert J. Gruendel, Curtis, Mallet-Prevost, Colt & Mosle, New York, NY.

For Arthur Femenella and the Association of Restoration Specialists, Inc., Counter Defendant: Marc Howell Pillinger, Kuczinski, Vila, Tarallo, Pillinger & Miller, LLP, Elmsford, NY.

For Nippon Express U.S.A., Inc., Cross Claimant: Robert J. Gruendel, **[*3]** Curtis, Mallet-Prevost, Colt & Mosle, New York, NY.

For The Association of Restoration Specialists, Inc., The Association of Restoration Specialists, Inc., ThirdParty Defendant: Paul Edward Svensson, Boeggeman, George, Hodges & Corde, P.C., White Plains, NY.

For J. Alastair Duncan, J. Alastair Duncan, Ltd., Counter Claimants: Dennis Michael Flaherty, Glenn F. Ostrager, Ostrager, Chong, Flaherty & Broitman, P.C., New York, NY.

For J. Alastair Duncan, J. Alastair Duncan, Ltd., Cross Claimants: Dennis Michael Flaherty, Glenn F. Ostrager, Ostrager, Chong, Flaherty & Broitman, P.C., New York, NY.

For Arthur Femenella and the Association of Restoration Specialists, Inc., Cross Defendant: Marc Howell Pillinger, Kuczinski, Vila, Tarallo, Pillinger & Miller, LLP, Elmsford, NY.

**JUDGES:** DEBORAH A. BATTS, United States District Judge.

**OPINION BY:** DEBORAH A. BATTS

**OPINION:** Memorandum & Order

DEBORAH A. BATTS, United States District Judge.

A Daubert hearing was held on November 14, 15, 16, 17, and December 15 and 16, 2005, upon the motion of Defendants Tokio Marine and Fire Insurance Company and Chubu-Nippon Broadcasting Company, Ltd. and Third-Party Defendants Arthur Femenella **[*4]** and the Association of Restoration Specialists, Inc. ("ARC"). Defendants and Third-Party Defendants Femenella and ARC have moved to preclude Plaintiff's causation and damages experts.

The factual background of this dispute has been set forth in the Court's prior opinion on summary judgment in Bellis v. Tokio Marine, et al., 2002 U.S. Dist. LEXIS 1714, No. 93 Civ. 6549 (DAB), 2002 WL 193149 (S.D.N.Y. Feb. 7, 2002), and will not be repeated here.

For the reasons that follow, Defendants and Third-Party Defendants' Motion to Preclude Plaintiff's experts is GRANTED in part and DENIED in part.

I. Legal Standard

The relevant rule for the admission of expert testimony is Rule 702 of the Federal Rules of Evidence. Rule 702 provides that:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, **[*5]** and (3) the witness has applied the principles and methods reliably to the facts of the case. n1

Fed. R. Evid. 702.

- - - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n1 Fed. R. Evid. 703 also concerns the admissibility of expert opinion. It states that an expert's opinion may be based on facts made known to him or her at or before the hearing, and such facts need not be admissible into evidence if they are of a type reasonably relied upon by experts in that field in forming opinions. See Fed. R. Evid. 703.

- - - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

The admissibility of an expert's opinion is determined by the district court. Any proponent of such evidence has the burden of establishing its admissibility by a preponderance of the evidence. See Fed. R. Evid. 104(a), 702, Advisory Committee Notes; Bourjaily v. United States, 483 U.S. 171, 175-76, 107 S. Ct. 2775, 97 L. Ed. 2d 144 (1987). "Rule 702 embodies a liberal standard of admissibility **[*6]** for expert opinion, representing a departure from the previously widely followed and more restrictive standard of Frye v. United States, 293 F. 1013, 1014 (D.C. Cir. 1923)." Nimely v. City of New York, 414 F.3d 381, 395 (2d Cir. 2005). Even with this more permissive approach to expert testimony, district courts still play a role as "gatekeepers" with the responsibility of ensuring that scientific expert testimony is both relevant and reliable. Daubert v. Merrell Dox Pharmaceuticals, Inc., 509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993). A court must make certain "that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." Nimely, 414 F.3d at 396.

The court must make three inquiries when determining the admissibility of expert testimony. The court must first determine whether the expert witness is properly qualified as an expert to testify in matters that are scientific, technical or specialized in nature. See Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 156-57, 119 S. Ct. 1167, 143 L. Ed. 2d 238 (1999) **[*7]** (stating that a court must decide "whether [the proffered] expert [has] sufficient specialized knowledge to assist the jurors in deciding the particular issues in the case."). Upon satisfaction of this threshold requirement, the court must determine whether the expert opinion is both relevant and reliable. See Fed. R. Evid. 702; United States v. Kwong, 69 F.3d 663, 668 (2d Cir. 1995) cert. denied, 517 U.S. 1115, 116 S. Ct. 1343, 134 L. Ed. 2d 491 (1996); see also FDIC v. Suna Assocs., 80 F.3d 681, 686 (2d Cir. 1996). "In admitting expert testimony, a trial court must determine whether the expert's reasoning and methodology can appropriately be applied to the case before it." Stagl v. Delta Air Lines, 117 F.3d 76, at 81.

The Daubert court set forth a method for assessing the reliability of a proffer of expert scientific testimony. The method instructs the court to examine an expert's theory for (1) its ability to be tested; (2) whether it has been subjected to peer review; (3) its potential rate of error; and (4) whether it has gained general acceptance in the relevant scientific community. Iacobelli Construction v. County of Monroe, 32 F.3d 19, 24 (2d Cir. 1994) **[*8]** (citing Daubert, 509 U.S. at 593-94). This test for reliability is flexible, see Zaremba v. General Motors Corp., 360 F.3d 355, 358 (2d Cir. 2004), and the list of factors "neither necessarily nor exclusively applies to all experts or in every case." Kumho, 526 U.S. at 141. At the same time, "the trial judge has 'the same kind of latitude in deciding how to test the expert's reliability . . . as it enjoys when it decides whether that expert's relevant testimony is reliable." Zaremba, 360 F.3d at 358 (quoting Kumho, 526 U.S. at 152). When undertaking this flexible inquiry, the court "must focus on the principles and methodology employed by the expert." Amorgianos v. AMTRAK, 303 F.3d 256, 266 (2d Cir. 2002). If the expert opinion is based on data, a methodology, or studies that are inadequate to support the conclusions, Daubert and Rule 702 mandate the exclusion of the unreliable expert testimony. Id. "To warrant admissibility, . . . it is critical that an expert's analysis be reliable at every step." Id. at 267. A court must ensure **[*9]** that there is a rigorous analytical connection between the methodology and the expert's conclusions. "Nothing in either Daubert or the Federal Rules of Evidence requires a district court to admit opinion evidence which is connected to existing data only by the ipse dixit of the expert." General Electric Co. v. Joiner, 522 U.S. 136, 146, 118 S. Ct. 512, 139 L. Ed. 2d 508 (1997).

The Supreme Court has also cautioned that although the Federal Rules of Evidence with its "liberal thrust" superceded the rigid requirements under Frye, "the adjective 'scientific' implies a grounding in the methods and procedures of science. Similarly, the word 'knowledge' connotes more than subjective belief or unsupported speculations." Daubert, 509 U.S. at 590.

A court must further determine that an expert witness must have such skill, knowledge, or experience in his field as to make it appear that his opinion will "assist the trier of fact" to understand the evidence or determine a fact in issue. See Fed. R. Evid. 702; Andrews v. Metro North Commuter R.R., 882 F.2d 705, 708 (2d Cir. 1989). In determining whether the evidence would assist **[*10]** the jury, the court must "make a common sense inquiry into whether the untrained layman would be qualified to determine intelligently and to the best possible degree the particular issue without enlightenment from those having a specialized understanding of the subject involved in the dispute." United States v. Locascio, 6 F.3d 924, 936 (2d Cir. 1993), cert. denied, 511 U.S. 1070, 114 S. Ct. 1645, 114 S. Ct. 1646, 128 L. Ed. 2d 365 (1994). It is well-established that expert testimony is unnecessary "in cases where jurors 'are as capable of comprehending the primary facts and of drawing correct conclusions from them as are witnesses possessed of special or peculiar training.'" Wills v. Amerada Hess Corp., 379 F.3d 32, 46 (2d Cir. 2004) (quoting Salem v. United States Lines Co., 370 U.S. 31, 35, 82 S. Ct. 1119, 8 L. Ed. 2d 313 (1962).

"Doubts about whether an expert's testimony will be useful should generally be resolved in favor of admissibility." Lappe v. American Honda Motor Co., 857 F. Supp. 222, 226 (N.D.N.Y. 1994) (citing Larabee v. MM&L Int'l Corp., 896 F.2d 1112, 1116 n.6 (8th Cir. 1990).

II. Plaintiff's Causation Experts

Plaintiff seeks to present the testimony **[*11]** of Professor Martin Eidelberg, David Donaldson, Frederick Brandt, and William Warmus as expert witnesses on the issue of what caused damage to the Plaintiff's Tiffany objects during the period of time the objects were in transit to and from, and during the Japanese Exhibition. n2 The Tiffany objects were in transit to and from the Japanese Exhibition beginning September 21, 1990 and ending September 20, 1991 ("the Insurance Period"). Bellis, 2002 U.S. Dist. LEXIS 1714, 2002 WL 193149, at *2. The objects were delivered to Plaintiff's residence in Lakehurst, New Jersey on

September 30, 1991. (Bragar Decl. at Ex. D, p.10.) On that day, Defendant Femenella allegedly noticed damage to pieces when opening crates in Plaintiff's garage and informed the Plaintiff. (Id.)

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n2 A fifth expert, Melville Greenland, was withdrawn by Plaintiff's counsel and the Daubert motion as against him is moot. (Trans. of Dec. 16, 2005 at 572-73.)

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

Defendants and Third-Party Defendants Femenella and ARC have moved to preclude these experts on the **[*12]** grounds that: (1) they utilized a flawed methodology, (2) they lack the necessary qualifications to give an opinion on glass chemistry, (3) their opinions rely exclusively on speculation, unsupported assumptions, probability theories, and self-serving statements by Plaintiff and his counsel, and (4) the proposed testimony is not the product of any specialized knowledge and will offer no assistance to the trier of fact, particularly since Plaintiff's causation experts did nothing to scientifically verify self-serving statements.

Professor Martin Eidelberg is currently self-employed, writing, lecturing and consulting in the areas of French 18th Century drawings and paintings, and modern decorative arts. (Trans. of Nov. 14, 2005 at 26.) Previously, he was an art history professor at Rutgers University. (Id. at 28.) He was first retained by Plaintiff as an expert in 1994 and conducted his initial counting of cracks in June, 1996. (Trans. of Nov. 15, 2005 at 154.)

David Donaldson is also self-employed and works as a consultant in the field of the works of Louis Comfort Tiffany and other American art glassmakers. (Trans. of Nov. 16, 2005 at 262.) Before this, he worked as a curator and **[*13]** conservator at the Corning Museum of Glass and the Morse Museum of American Art in Winter Park, Florida. (Id. at 263-64.) He was retained as an expert by Plaintiff in the fall of 1996. (Id. at 273.)

Frederick Brandt, currently retired, was previously employed by the Virginia Museum of Fine Arts where he was head curator and curator of Twentieth Century Art. (Trans. of Dec. 15, 2005 at 430.) He inspected the Tiffany objects in early 1996. (Id. at 464.)

The final expert, William Warmus is a freelance writer, curator and appraiser specializing in glass of the Twentieth Century. (Id. at 524.) He also runs a company called William Warmus Incorporated, which does appraisal work curating. (Id. at 527.) He previously worked as a curator of Twentieth Century glass at the Corning Museum of Glass. (Id. at 526.) Warmus was first contacted by Plaintiff to be a potential expert in this case in 1993. (Id. at 536.) However, it was only in 1996 that Warmus first inspected the objects. (Id. at 536, 560)

The first causation expert to inspect the Tiffany objects was Professor Eidelberg. This inspection took place on June 7, 1996, close to five years after the Japanese exhibition. (Bragar Decl. at Ex. **[*14]** D, p.18; Eidelberg Report at p.5; Trans. of Nov. 15, 2005 at 154.) Prior to that inspection, Plaintiff had affixed white tape to the Tiffany objects where he thought the objects were cracked. n3 (Trans. of Nov. 15, 2005 at 123.) During the course of his own examination of the objects, Professor Eidelberg placed white stickers with red and blue lines on the objects, to differentiate between cracks allegedly present before the Japanese exhibition, and damage to the objects after the objects left for Japan. (Id. at 68, 78; Trans. of Nov. 16, 2005 at 250-51.) During this examination, Professor Eidelberg removed the white tape affixed to the objects by Plaintiff. (Trans. of Nov. 15, 2005 at 124; Trans. of Nov. 16, 2005 at 251.) Plaintiff had also arranged for photographs to be taken of the objects. Plaintiff assisted in preparing the acetates affixed to the photographs that



allegedly showed the damage to the objects pre- and post-Japan. (Trans. of Nov. 15, 2005 at 145.) According to his testimony, Professor Eidelberg utilized Plaintiff to prepare the acetates because Plaintiff "was a trained graphic artist" and had a much firmer line than Professor Eidelberg in terms of drawing. (Id. at **[*15]** 69.)

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n3 Prior to Professor Eidelberg's examination of the Tiffany objects, many crack counts had already been conducted, each crack count resulting in a different total of cracked pieces. On October 10, 1991, Plaintiff and Mr. McLaughlin, an insurance adjuster, counted 117 cracked pieces. On May 29-30, 1992, Plaintiff again inspected the objects, unassisted, and reported 326 cracked pieces. After another inspection, in April, 1993, Plaintiff reported 298 cracked pieces. Also in April, 1993, a specialist inspected the seven shades and reported 257 cracked pieces in the shades; he did not inspect the windows. (Bragar Decl. at Ex. D, pp.12-14; see also Bellis, 2002 U.S. Dist. LEXIS 1714, 2002 WL 193149, at *6-7.)

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - -

After this inspection by Eidelberg, Warmus inspected the objects on June 25, 26 1996, and Brandt in July, 1996. n4 Donaldson inspected the objects and the crates in which they were carried on December 14, 1996. (Donaldson Report at p.1.) At the time Warmus and Donaldson inspected the objects, in June and December, **[*16]** 1996, respectively, the white tape with the red and blue lines placed by Professor Eidelberg were on the objects. (Trans. of Nov. 16, 2005 at 277; Trans. of Nov. 17, 2005 at 412; Trans. of Dec. 15, 2005 at 537.) All four experts inspected the objects again on June 9, 1997, to confirm the final count of cracks. (Bragar Decl. at Ex. D. at pp.18-19.)

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n4 Brandt testified that he may have inspected the objects earlier than July, 1996. (Trans. of Dec. 15, 2005 at 464.) An earlier inspection by Brand, however, is not documented in the timeline submitted by Plaintiff. (Bragar Decl. at Ex. D.)

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - -

None of the four witnesses proffered by the Plaintiff as causation experts examined the Tiffany objects until several years after the alleged damage took place. During that period, the objects had been moved several times. (Id. at pp.10-18.) While all four of the proffered experts are clearly well-qualified in their respective fields, it is not clear that they are qualified to be causation experts on damage caused during the Insurance **[*17]** Period, which ended on September 20, 1991, when they inspected the objects several moves and four or five years after the fact. Further, when they examined the objects, the objects had been clearly marked either by Plaintiff David Bellis, or by Professor Eidelberg, who placed the white tags with blue or red lines on the objects when the tags placed by Plaintiff were still on the objects. In addition, Professor Eidelberg utilized Plaintiff as an "assistant" throughout his examinations of the objections and in the preparation of the acetates. Each of the four experts were not afforded an opportunity to view the objects in a timely fashion nor in neutral conditions. Conditions for objective investigation and evaluation were so compromised by this time lag and lack of neutral conditions at the time of the inspections, that any opinion the Plaintiff's causation experts formed is no different from what jurors might find presented with the same evidence used by Plaintiff's causation experts. n5



- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n5 This also applies to the inspection of the crates by Mr. Donaldson and his conclusions about damage to the objects caused by the crating system used for the objects. Those crates had also been in the possession of Plaintiff for over four to five years by the time Mr. Donaldson examined them. In addition, Mr. Donaldson testified that he has no way of dating the damage to the crates. (Trans. of Nov. 17, 2005 at 382.)

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - - **[*18]**

Furthermore, all four experts testified that Defendants did not comply with museum standards when packaging, transporting and setting up the exhibitions in Japan. (Trans. of Nov. 15, 2005 at 90-99; Trans. of Nov. 16, 2005 at 278, 306, 308; Trans. of Dec. 15, 2005 at 437-39, 546-50.) These standards, n6 including the Museum Registration Methods issued by the American Museum Association, do not apply to individual collectors or private companies like Nippon Express. The Court will not make the leap that standards applicable to museums are relevant and applicable to private companies and individual collectors. Moreover, as Brandt testified, Japanese museums are not subject to the Museum Registration Standards and do not have corresponding standards, and cannot, therefore, be expected to comply with these museum standards. (See Trans. of Dec. 15, 2005 at 449.)

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n6 All the experts referred generally to museum methodology and standard practice. Brandt specifically referred to the American Museum Association standards, and more specifically, the Dudley Wilkinson Museum Registration Methods, in his testimony. (Trans. of Dec. 15, 2005 at 449-51.)

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - - **[*19]**

Each time the objects were examined, the causation experts utilized different methodologies, using different conditions and tools. (Trans. of Nov. 15, 2005 at 177; Trans. of Nov. 17, 2005 at 407, 414; Trans. of Dec. 16, 2005 at 500.) Accordingly, focusing on the principles and methodology employed by the experts, the Court finds the data based on examination, moves and years after the fact, and the lack of uniformity of methodology among them, are inadequate to support their conclusions and that their opinions will not aid the trier of fact. Thus, Plaintiff's experts, Professor Martin Eidelberg, David Donaldson, Frederick Brandt and William Warmus, are precluded from testifying as causation experts.

III. Plaintiff's Damages Experts

Plaintiff's damages experts did not participate in the Daubert hearing. Defendants and Third-Party Defendants' basis for preclusion of damages experts from trial is that if causation experts are precluded from testifying because they are unreliable, the testimony of damages experts will also be unreliable because they rely on the testimony of the causation experts.

Although the Court has precluded Plaintiff's causation experts, the Court does not **[*20]** find that Plaintiff's damages experts must also be precluded. Because it is possible that the jury will find reliable evidence that there was damage to the Tiffany objects during the Insurance Period caused by Defendants, Plaintiff's damages experts shall be permitted to testify.

IV. Conclusion

Case 3:02-cv-01001-AWT Document 97-16 Filed 01/05/2007 Page 8 of 8

For the foregoing reasons, Defendants and Third-Party Defendants Femenella and ARC's Motion to Preclude Plaintiff's Causation and Damages Experts is GRANTED in part and DENIED in part. Plaintiff's Causation Experts are precluded from testifying at trial.

The Court previously set pre-trial submission dates, which were adjourned pending the outcome of the instant Daubert motion. The Court hereby sets the following new deadlines for pre-trial submissions:

. Joint Pre-Trial Order ("JPTO"), Requests to Charge and Proposed Voir Dire no later than June 5, 2006;

. Memoranda of Law addressing those issues raised in the JPTO no later than June 5, 2006; and

. Response to the Memoranda no later than June 26, 2006.

All submissions shall be in accordance with the Individual Practices of Judge Deborah A. Batts, as amended October 7, 2005. See Individual Practices of the **[*21]** Honorable Deborah A. Batts, available at: http://www.nysd.uscourts.gov/Individual_Practices/Batts.pdf.

SO ORDERED.

Dated: New York, New York

March 14, 2006

DEBORAH A. BATTS

United States District Judge

Service: **Get by LEXSEE®**
Citation: **2006 U.S. Dist. LEXIS 10296**
View: Full
Date/Time: Friday, January 5, 2007 - 4:12 PM EST

* Signal Legend:
- Warning: Negative treatment is indicated
- Questioned: Validity questioned by citing refs
- Caution: Possible negative treatment
- Positive treatment is indicated
- Citing Refs. With Analysis Available
- Citation information available

* Click on any *Shepard's* signal to *Shepardize®* that case.




About LexisNexis | Terms & Conditions
Copyright © 2007 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.